No. 3440

Second Circuit

POPE v. MOST WORSHIPFUL ST. JOHN'S GRAND LODGE

(December 19, 1928. Opinion and Decree.)

Robert Layton, of Monroe, attorney for plaintiff, appellant.

Charles M. Roberson, of Shreveport, attorney for defendant, appellee.

## STATEMENT OF THE CASE.

REYNOLDS, J. Plaintiff, Amanda Pope, widow of H. P. Pope, sued the defendant, Most Worshipful St. John's Grand Lodge, Ancient Free and Accepted Masons, of the State of Louisiana, for herself and her two minor children, Robert Lee Pope and Lee Alvin Pope, issue of her marriage with the deceased, of which children she is the confirmed natural tutrix, to recover $500.00, with legal interest thereon from May 1, 1926, on a benefit certificate for that amount issued by defendant to the deceased and payable to his widow and children on the death of the said H. P. Pope.

She alleges that her husband died May 1, 1926, and that on July 16, 1927, she furnished defendant with proper proof of the death of her husband.

She further alleges that, on May 2, 1926, defendant obtained from her the certificate sued on and had not returned it.

The defense is that the deceased had not paid his dues for the months of April and May, 1926, in consequence of which the certificate had lapsed.

On these issues the case was tried and there was judgment rejecting plaintiff's demand and dismissing her suit and she has appealed.

## OPINION.

The constitution and by-laws of defendant were introduced in evidence and show that each certificate holder is required to pay monthly a tax of 85 cents, called dues, in time for the secretary of the local lodge to transmit it to the secretary of the Grand Lodge and have it in his hands not later than the tenth day of the month, and that failure of the certificate holder to pay such dues within the time mentioned automatically forfeits all benefits under the certificate.

W. D. Wright testified that he was Master of King Solomon Lodge No. 15 at the time of the death of H. P. Pope, and:

"Q. Do you know of your own knowledge whether or not he was in good standing?
"A. According to the secretary's record he was."

On cross-examination he was shown the report of the secretary of the lodge to the Grand Lodge for the month of April, 1926, of dues paid by certificate holders, and he was asked:

"Q. I will ask you to examine this instrument and state whether or not that is a report from your lodge?
"A. I don't see no date on it.
"Q. The month of April is there, isn't it? You signed it, didn't you?
"A. This is for King Solomon lodge—
"Q. This is the lodge that you were Master of. I now I ask you—this is the report that you O. K'd and sent in for the month of April? Examine it and see if you remitted for H. P. Pope?
"A. If I remitted or the lodge remitted?
"Q. Whether you or the lodge?
"A. His name is not on that.
"Q. His name is not on that report for the month of May?
"A. That's April.
"Q. For the month of April, for which you O. K'd and sent in? Well, if he had been in good standing—if he paid into your lodge, you would remitted for it?
"A. My report shows where they double up."

J. W. Beatty testified that he was secretary of King Solomon Lodge No. 15 at the time of the death of H. P. Pope, and he was asked:

"Q. State whether or not H. P. Pope was a member in good standing at the time of his death, according to your records?

"A. Yes, sir; according to my records, he was in good standing.

"Q. State whether or not he paid his dues for the month of April, 1926?

"A. Yes, sir, he paid his dues. That is, the lodge allowed so much and they give a check and I charged it to his account. At the time his wife didn't send up the money. Reverend Brunson brought the money for a time. Whenever they didn't have the money there the lodge would allow so much for him and make a check and credit to his account.

\* \* \*

"Q. State whether or not during the time you were in there, he was ever dropped as a delinquent?

"A. No, sir.

\* \* \*

"Q. State whether or not the lodge pays the burial expenses not in good standing?

\* \* \*

"A. Not to my knowledge they would not.

\* \* \*

"Q. Do you know whether or not the dues owing by Pope for the month of April, 1926, were forwarded to the Grand Lodge at Shreveport in due time?

"A. Well, on the report—we sent him up on the report.

"Q. You sent him in on the report?

"A. Yes, sir.

"Q. What does that mean?

"A. Report on the dues, indemnity dues.

"Q. You reported that he had paid?

"A. Had paid, yes, sir.

\* \* \*

"Q. Who did the paying? Did you pay the Shreveport Lodge, or who?

"A. No, sir; I made out the report and the treasurer sent the money in.

"Q. Who was the treasurer at that time?

"A. Jim Fellows."

On cross-examination he testified:

"Q. As secretary of the lodge, you collected eighty-five cents per month from the members during your incumbency in office?

"A. Yes, sir.

"Q. The several eighty-five cents you collected you remitted each month to cover their relief with the relief association?

"A. Yes, sir.

"Q. Do you know when those remittances were to be made?

"A. On or before the 10th of each month they were to make remittances to cover their relief dues.

"Q. You made out the report for the month of April for the local lodge, did you not?

"A. Yes, sir.

"Q. You signed the report?

"A. Yes, sir.

"Q. You remitted eighty-five cents for all the members that had paid into the local lodge at that time?

"A. All that was on the roll, yes, sir.

\* \* \*

"Q. Examine this report, and see, when you made remittance, did you include Pope on the April report?

"A. I don't see it there.

\* \* \*

"Q. This is your report?

"A. My handwriting.

"Q. Did you include Pope's name on the May report?

"A. Yes, sir.

\* \* \*

"Q. I hand you this report for the month of May, and ask you to examine that—first, testify, is that the report from your lodge? And if you find Pope's name on there?

\* \* \*

"A. I don't see it now."

George Fellows testified that he was treasurer of the local lodge and that:

"Q. State whether or not Pope's dues were paid for the month of May, 1926, on this certificate?

"A. You see, at that time Pope was sick, and the lodge paid his dues for him, kept the dues up; couldn't drop him, he was sick; the lodge credited him up and sent him up on the report.

\* \* \*

"Q. Do you know whether or not his dues for the month of April were sent to Shreveport?

"A. Now I issue the check according to the secretary amount, he gives me for the endowment. Sometimes he gives me for a check to be double, for two payments, and I would write them out for what they called for."

On cross-examination he testified:

"Q. Fellows, you don't know anything about the number of members that was

made up on the secretary's report? You only know he called on you for so much money?

"A. I never compared the report.

"Q. You simply cashed the orders when they came to you properly signed?

"A. That's all.

"Q. You don't know what men were on the report or what was off?

"A. I do not."

J. A. Steadman testified that he was Grand Secretary of the Grand Lodge, defendant in this case, and was such at the time of the death of H. P. Pope, and:

"Q. I hand you this report, Steadman, and ask you to examine that report and testify did that come from your office, and if so how did you get it?

"A. Through the mails, from the secretary, W. B. Wright.

"Q. Examine that report and see if the name of one H. P. Pope is remitted for the month of May?

"A. Not that I can see.

"Q. I will ask you to examine this record and state what does it show regarding the disposition of H. P. Pope?

"A. H. P. Pope is number 30 on the roll, and he is paid for 1926, for January, February and March; dropped on 4-11-26."

The evidence satisfies us that the dues for the months of April and May were not remitted to the Grand Lodge and that deceased was delinquent in payment of his dues at the time of his death and consequently his certificate had lapsed.

But plaintiff's counsel insists that the local lodge was the agent of the Grand Lodge for the purpose of collecting and remitting the dues and that the certificate could not be forfeited for neglect of the local lodge to make remittance.

This is only true where the local lodge actually received the members' dues, but not true where, as here, the dues were never actually paid but, at most, were expected to be paid by the local lodge as an act of charity.

The gratuitous payment of dues of a member to the Grand Lodge by the local lodge was no part of the duty of the local lodge to the Grand Lodge, and the Grand Lodge could not be estopped to declare the certificate lapsed because of the failure of the local lodge to perform an expected gratuitous act.

Plaintiff further insists that the evidence shows that the burial department of defendant paid funeral benefits to the amount of $75.00 on account of the death of Pope, and contends that this act estops defendant to assert that the deceased was not in good standing.

The burial department and the insurance department are two distinctly separate departments of the defendant organization, and a member of both might be in good standing as to one and not in good standing as to the other. Presumably the dues of the deceased to the burial department were paid and that that is why the benefits accruing as a member of that department were paid. But be this as it may, the discharging by the defendant to a deceased of the benefits promised by its burial department could not estop it to deny liability for benefits under its insurance department.

We find no error in the judgment appealed from and accordingly it is affirmed.