**BLUNSON v. KNIGHTON et al. ***
No. 4276.

Court of Appeal of Louisiana. Second Circuit.
March 16, 1932.

*Rehearing denied April 5, 1932.

Argued before DREW, McGREGOR, and PALMER, JJ.

John G. Gibbs, of Shreveport, for appellant.

A. A. Le Rosen, Cecil Morgan, and Herold, Cousin & Herold, all of Shreveport, for appellees.

PALMER, J.

This is a suit for a partition of a lot of ground situated in the city of Shreveport. Plaintiff alleges that the property in question was acquired by defendant, Abe Knighton, during the existence of the community of acquets and gains between him and plaintiff's mother, Eliza Knighton; that her mother subsequently died, leaving plaintiff as her sole heir; that she and defendant own said property in the proportion of one half to each; that she has been placed in possession of her undivided one-half interest by judgment of the court; that said property is worth approximately $3,000, and is not susceptible of a partition in kind; that she is unwilling to remain any longer as owner in indivision and desires a partition by licitation. She prays for a judgment in conformity to her demands.

The defendant Abe Knighton answered plaintiff's demands, denying each of her material allegations. He then alleges that he acquired this property in 1911 as husband of Eliza Williams Knighton and that she obtained a judgment of final divorce from him on October 29, 1913, and that she did not, within thirty days thereafter, or at any subsequent time, accept the community that had existed between them, and that her failure to do so operates as a renunciation of her community rights, thereby barring her and her heirs from asserting the rights claimed by plaintiff in this suit.

In the alternative, he alleges, in effect, that after the said judgment of divorce was signed (just five days afterwards), he executed before a notary public who had represented, as attorney, the wife of defendant in said divorce suit, a mortgage upon the whole of said property and that S. J. Harman of Caddo parish became the owner of the mortgage note, in good faith, believing it to be secured by mortgage on the whole lot; that Harman later foreclosed said mortgage and purchased said property at the sale; that Harman, after holding title to said property for nearly five years, resold the property

to defendant Abe Knighton, and that Harman, during his period of ownership, had possession of it; that since he acquired said title from Harmon he has held possession thereof continuously. He alleges that neither he nor Harman had any knowledge of any outstanding claims of any one to any portion of said property, so on these facts he pleads the prescription of ten years. He prays for a rejection of plaintiff's demands and in the alternative that his plea of ten years' prescription be sustained and plaintiff's demands rejected.

In the meantime, the defendant Abe Knighton died, so on May 13, 1931, Mary B. Hatcher appeared in the case by supplemental answer, alleging the death of Abe Knighton and that she is his sole heir, setting out her relationship to him. She makes substantially the same allegations which were made by the original defendant, but supplemented them in part with more detailed averments. She adds, in the alternative, the defense of estoppel based upon the ground that plaintiff and her deceased mother stood by in 1915 when Harman bought the property at foreclosure sale without offering any protest. She further pleads in the alternative that Abe Knighton made a full settlement with his wife, Eliza Williams Knighton, on her community claims. She then pleads in the alternative prescriptions of "one, two, three, five, ten and fifteen years."

She further supplements the defenses urged on behalf of the original defendant with the further plea of estoppel, alleging as a basis that plaintiff, acting through another party, undertook to foreclose a mortgage which Abe Knighton had executed on the whole of said properties, using her attorney in this case, thereby admitting that these properties belonged to Abe Knighton while he lived and to her since his death. She then alleges that she is entitled to call S. J. Harman in warranty in the case and he was accordingly made a party to the suit.

S. J. Harman answers to the effect that he bought the property in good faith at a foreclosure sale and took actual possession thereof and had no knowledge that Abe Knighton had ever been married; that he believed Abe Knighton was the sole owner of said property because the records of Caddo parish disclosed nothing to the contrary. He pleads that if plaintiff or her mother had any claims against this property, he was without any knowledge thereof and that they stood by and permitted the property to be sold at foreclosure sale, at which time he purchased it, without asserting any claims thereto, and hence, in the alternative, he pleads estoppel, and further pleads prescription of five and ten years. He avers that the foundation of his title was a mortgage executed on said property by Abe Knighton and that defendant Mary B. Hatcher, heir of Abe Knighton, is estopped

to call him in warranty, she having accepted the succession of Abe Knighton. He prays that plaintiff's demands be rejected. In the alternative he prays that the pleas of estoppel and prescription urged against plaintiff be sustained and her demands rejected.

Harman further prays that his plea of estoppel against Mary B. Hatcher be sustained and that her call in warranty be rejected.

S. J. Harman, later and in a separate appearance, pleads prescription of thirty days under articles 2419 and 2420 of the Civil Code, basing that plea upon the allegations that Eliza Williams Knighton, through whom plaintiff is claiming, obtained an absolute divorce from Abe Knighton and did not accept, nor claim any part of, the community property, if there was any. He further pleads in this same appearance the prescription of five years under article 3543 of the Civil Code. He prays that these pleas be sustained and plaintiff's suit dismissed.

After the case was tried, but before it was submitted, the substituted defendant, Mary B. Hatcher, filed a motion to reopen the case, alleging that plaintiff had testified on the trial that her mother and father were married and divorced in Red River parish; that after the trial her attorney, assisted by the clerk of court, had examined the records of Red River parish with the result that no such divorce could be found and that "the search by the Clerk and by mover's attorney clearly shows that there was no such divorce." The district judge denied this motion and counsel for defendant reserved a formal bill of exception to the ruling of the court.

The judgment of the lower court overruled the pleas of estoppel filed by the defendant and by the warrantor and decreed plaintiff and defendant each to be the owner of an undivided one-half interest in the property in question, and that the property is not divisible in kind and ordering a partition by licitation, the cost to be borne by the mass. The judgment is silent as to the demands of S. J. Harman on the call in warranty, but there was filed in this court, on the day the case was submitted, a stipulation, signed by the attorneys of all the parties in interest, declaring that the trial court did "sustain the warrantor's plea of estoppel against the defendant and rejected the defendant's claims against warrantor." We shall therefore recognize the judgment of the district court as including this stipulation. From that judgment defendant prosecutes this appeal.

### The Facts.

The following facts are clearly established by the plaintiff: That Abe Knighton, the original defendant, and Eliza Williams Knighton, the mother of plaintiff, were married December 27, 1897; that on October 29, 1913, they were divorced by judgment of the district court of Caddo parish, and by the terms of which judgment the community of acquets and gains existing between them was expressly dissolved; that on July 3, 1911, Abe Knighton purchased the property in question and in his deed of purchase, in giving his marital status, declared that he was at that time the husband of Eliza Williams Knighton; that plaintiff is the sole surviving heir of Eliza Williams Knighton by a former marriage; and that Eliza Williams Knighton died in 1915, and that she was recognized as such heir and sent into possession of an undivided one-half interest in said property by judgment of the district court of Caddo parish.

The following facts are clearly established by the defendant: That Abe Knighton is dead; that Mary B. Hatcher is his sole surviving heir and that after his death she has properly substituted herself as the defendant in the case (not denied); that on November 3, 1913, Abe Knighton, declaring himself a divorced man, executed unto any future holder a mortgage on this property securing his note for one thousand dollars; that S. J. Harman became the owner of this note and foreclosed the mortgage, buying the property at foreclosure sale; that on January 5, 1920, Harman resold this property to Abe Knighton; that Abe Knighton resided upon this property continuously from the time he bought it in 1911, until his death in November, 1930.

With these facts established, it is clear that plaintiff is entitled to the judgment she prays for unless she is barred by the pleas of estoppel and prescription urged by the defendant and S. J. Harman against her demands. We shall consider these pleas in the order stated.

### Plea of Estoppel.

The plea of estoppel urged by S. J. Harman against the defendant will be considered later on in this opinion. This plea as urged by defendant is based upon the allegations that plaintiff and her mother, from whom she inherited, stood by and permitted the foreclosure sale by Harman after it had been advertised for more than thirty days, without any protest or without any notice of the claim asserted in this suit. Defendant urges the additional ground that plaintiff and her mother stood by and permitted Abe Knighton to pay all taxes assessed against said property without offering to assist therein. She also pleads the further ground that plaintiff caused William Blackman to file foreclosure proceedings against her on a small balance due on a note of Abe Knighton, secured by mortgage on the whole of said property, and used her attorney in this case for that purpose. It is a well-settled rule of law that when a person stands by and permits a sheriff's sale of his property to be made without offering any protest, he is estopped from contesting the sale. However, this rule is based

upon specific acquiescence or actual presence at the sale, with actual knowledge of what is taking place. Unless the plaintiff, or her mother if she was alive at the time, had actual knowledge of the foreclosure by Harman, plaintiff could not be estopped from asserting her demands in this case on account of such a sale.

In the case of Sicard et al. v. Gumbel, 112 La. 483, 36 So. 502, cited by defendant, the plaintiff set out in his petition that certain property belonged to the succession of the widow, announced his purpose to have it sold to pay her debts, and caused the petition to be served upon her heirs and cited them to make objection, if any they had. The heirs made no appearance and a judgment was rendered against them, so it was held under such facts the heirs were estopped to assert, after the lapse of years, against a purchaser who bought at a sale made by the administrator of the succession. In that case the heirs not only had full knowledge of the proposed sale, but were actually cited to make any objections they might have thereto, and failed to do so. By their conduct the heirs certainly specifically acquiesced in the sale and were properly held estopped to contest it. This same principle is enunciated in all the authorities dealing with this subject. Each case cited by defendant clearly maintained this view. To be estopped from asserting a claim to a right, a person must have knowingly done some act that was misleading in its effect upon the conduct of another in acquiring that right. It may consist of positive acts performed, or it may arise from silence and acquiescence; but in all events there must be specific acts or silence and acquiescence that actually mislead a person in a course he followed.

A plea of estoppel is a special defense, so he who alleges it must prove it. In this case there is no evidence that plaintiff or her mother ever knew that the mortgage foreclosed by Harman existed. Certainly there is no proof that they even knew of the foreclosure, much less being present and standing by, permitting the sale without protest.

The other phase of this plea involves a foreclosure proceeding by a third party on another mortgage later given by Abe Knighton on the whole of this same property. On cross-examination of plaintiff she was asked if that foreclosure was instituted with her knowledge and consent, to which she answered that it was. On that showing, plus the fact that the attorney for plaintiff in this case was the attorney for the plaintiff in that case, defendant urges estoppel against plaintiff in this action. We think this contention is without merit. In our opinion this plea of estoppel is not sustained, and accordingly it is overruled.

This brings us to a consideration of the several pleas of prescription.

### Prescription of Thirty Days.

The prescription of thirty days is based upon article 2420 of the Civil Code, which was repealed by Act No. 49 of 1926. Under that article the wife, separated from bed and board, who has not, within thirty days from the separation finally pronounced, accepted the community, is supposed to have renounced the same.

In the case of Phillips v. Phillips, 160 La. 813, 107 So. 584, the Supreme Court, in a well-considered and most interesting opinion, held that Act No. 4 of 1882 supersedes article 2420 of the Civil Code, giving the wife separated from the husband the right to accept the community on the same basis as a widow and that, therefore, she does not forfeit her half of the community property by not formally accepting the community within thirty days.

It will be noted that the judicial construction previously placed upon article 2420 of the Civil Code was changed in this case. However, in the Phillips Case it involved rights between husband and wife only, so in the change of the judicial construction on this article of the Code the rights of third parties acquiring under contract while the previous judicial construction prevailed were not involved. It is argued by counsel for defendant that the doctrine in the Phillips Case was modified in the case of Lyons v. Veith, 170 La. 915, 129 So. 528, so as to make the principles enunciated in the Phillips Case applicable only to future transactions. That contention is clearly right, as it relates to parties who have acquired under contract any rights in properties formerly belonging to a community of acquêts and gains between the husband and wife, and which has been dissolved without the wife claiming her interest in the community. But the question arises: Did the court intend in the Lyons-Veith Case to hold that the doctrine in the Phillips Case would not have retrospective effect even when the husband and wife are the parties involved? It is a well-settled rule of law that judicial constructions placed upon statutes will serve to protect the rights of parties acquiring under contract while such judicial constructions prevail. It would indeed be a hardship to deprive a party of a vested right in property who acquired that right under contract and in good faith while a judicial construction upon a statute governing the transaction prevailed.

In the case of Douglass v. County of Pike, 101 U. S. 677, 687, 25 L. Ed. 968, the United States Supreme Court, in considering a question involving contract rights acquired under a settled judicial construction of a statute, said:

"After a statute has been settled by judicial construction, the construction becomes, *so far as contract rights acquired under it are concerned*, as much a part of the statute as the text itself, and a change of decision is to all intents and purposes the same in its effect on contracts as an amendment of the law by means of a legislative enactment." (Italics ours.)

█ It is true, the court in this case said that the change of judicial construction of a statute should not be retroactive, but it is made clear that the court was talking only about *rights acquired by contracts*. These views are clearly the views expressed by the Supreme Court of Louisiana in the Lyons-Veith Case, for the above authority is approvingly quoted and given as the principle underlying these contracts. The case of the Succession of Levy v. Hitsche, 40 La. Ann. 508, 4 So. 472–475, which quotes from the Douglass Case, supra, is approvingly cited by the Supreme Court. Also many other authorities are cited, dealing with the same subject in line with the doctrine announced in the Douglass Case, supra; but in all of them the rule relative to the retrospective effect of the change in decision was limited to future cases that involve rights acquired under contract. The very purpose of this rule is to protect those who have purchased property. or acquired a right, before an established jurisprudence is changed. Such a situation is presented in every case where the parties involved have become owners of the property, or right therein, under a contract executed in the faith that a prevailing judicial interpretation of a statute announces the correct principle of law involving the transaction. But such is not the case where the issues in dispute involving this question are between the husband and wife. As a matter of fact, they have not acquired their rights in the property by contract, but, on the contrary, the community is an outgrowth or result of the marriage between them. In other words, all community property is but the result of the marriage, so such property was not acquired under contract, but was produced as a result of a contract (of marriage).

A distinction between the Phillips Case and the Lyons-Veith Case clearly exists. As we have said, the Phillips Case was between husband and wife and was given a retrospective effect, while in the Lyons-Veith Case the plaintiff, seeking to enforce a contract of sale of real estate, had acquired his title under a contract of sale, depending upon the correctness of the judicial construction then prevailing on article 2420 of the Civil Code, and it is properly held that the rule laid down in the Phillips Case should not apply, as it relates to the retrospective effect of the doctrine. While the Supreme Court did not expressly recognize the distinction we are here making between these cases, yet it occurs to us that a fair consideration of the two opinions will show that there was recognized this distinction. All the authorities quoted in the Lyons-Veith Case sustaining the view that the doctrine enunciated in the Phillips Case should not have retrospective effect involved only instances where the rights affected were acquired under contract. No cases were cited where this question is between husband and wife.

█ In the case at bar the husband and wife are dead, although the husband did not die until after he had filed his answer in this case. The plaintiff is the sole heir of the wife, while the defendant is the sole heir of the husband, they each having accepted the succession, therefore they are before the court in this case entitled to the same rights, and bound by the same restrictions, that would have governed were the husband and wife the parties to the suit.

█ The judgment of divorce which the *deceased* wife obtained against the deceased husband, not only dissolved the bonds of matrimony, but also *expressly* dissolved the community. Under the Phillips Case—and we hold that the doctrine enunciated in that case governs this case—the deceased husband could not have pleaded against his wife that she had not accepted the community within the thirty days after the final judgment on the theory that she had renounced the community. But defendant argues that, even if this rule is correct, S. J. Harman became the owner of the property under a foreclosure sale and that he was a third party, purchasing in good faith, while the prevailing judicial interpretation of article 2420 of the Civil Code held that the wife would have to accept the community within thirty days after the judgment of divorce or it would be presumed that she had renounced the community and that, therefore, the principles enunciated in the Lyons-Veith Case relative to the retrospective aspect of the Phillips Case should apply. Let us see what the facts are on which this contention is based: It will be borne in mind that Eliza Williams Knighton, plaintiff's mother, secured her judgment of divorce against Abe Knighton, which expressly dissolved the community, on the 29th day of October, 1913, and that just five days later, viz., November 3, 1913, Abe Knighton executed the mortgage which Harman foreclosed, and in which Abe Knighton, knowing full well that he owned only an undivided one-half interest in the property, included the whole of it. In the first place, it is presumed that Harman acquired this mortgage at the time it was executed and, if so, he became the owner of it when only five of the thirty days had run in which Eliza Williams Knighton had to consider the acceptance of the community. So, it cannot be argued that Harman acquired the mortgage in the faith that he would be protected under the prevail-

ing judicial construction on article 2420, because the time given the wife under that article to consider the acceptance of the community had only expired in a very small part. But even if the facts are such that Harman could successfully urge that defense, when he redeeded the property to Abe Knighton, from whom he had acquired it at foreclosure sale, Abe Knighton could not be considered as subrogated to that right. Certainly Abe Knighton could not improve his position in this respect by the course the property took, because, when he repurchased it, his former status as to the property, as well as all parties in interest therein, was resumed. The plea of thirty days' prescription is therefore overruled.

### Plea of Five Years' Prescription.

The plea of five years' prescription is based on article 3543 of the Civil Code. Under that article, all informalities connected with or growing out of any public sale, made by any person authorized to sell at public auction, are prescribed against after the lapse of five years from the date of the sale. The facts show that Harman did not continue to own this property for five years. After the lapse of about four and one-half years from the time he acquired it, he redeeded it to Abe Knighton. Had the full five years run after the purchase by Harman before he resold it to Abe Knighton, this plea might be good; but since Harman redeeded the property to the same Abe Knighton some six months before the five years had run, the rights running in his favor under this article of the Code ceased. They could not be transferred to Abe Knighton, because when he reacquired the property, his same status towards the property, as well as all parties in interest therein, that had existed before he executed the mortgage, was resumed. We conclude, therefore, that this plea of prescription is not good and it is accordingly overruled.

### Plea of Ten Years' Prescription.

To maintain the plea of ten years' prescription in this case it is necessary that the defendant show good-faith possession under a just title for a period of ten years. Article 3451 of the Civil Code provides:

"The possessor in good faith is he who has just reason to believe himself the master of the thing which he possesses, although he may not be in fact, as happens to him who buys a thing which he supposes to belong to the person selling it to him, but which, in fact, belongs to another."

"If the title under which defendant claims is what the law denominates a just title, the possession thereunder must be considered in good faith, unless there is reference in the deed of sale to the title under which the conveyance is made, which destroys that good faith." La. Digest, vol. 7, p. 120, § 25.

"One is not a possessor in good faith who has cause to inquire and fails to avail himself of the means and facilities at hand to inform himself of the true facts and yet acted at his peril." La. Digest, vol. 6, p. 90, § 14.

"If the title under which one claims an immovable is what the law denominates a just title, the possessor thereunder must be considered in good faith, unless there is some reference in the deed of sale to the title under which the conveyance is made, which destroys that good faith. * * *" La. Digest, vol. 6, p. 90, § 15.

We shall now examine the facts underlying this plea. It is based upon the ground that Harman acquired the property at foreclosure sale on the 31st day of July, 1915, and held possession of it through Abe Knighton, who became his tenant, until he redeeded the property to Abe Knighton on the fifth day of January, 1920, and that thereafter Abe Knighton possessed the property as owner until his death in November, 1930. In order to maintain a plea of prescription of ten years, the possession at least must have begun in good faith, although it may have later continued in bad faith. It is, therefore, argued by the defendant that at least Harman was the possessor of the property during his period of ownership in good faith, so we shall first consider that claim.

The deed under which Abe Knighton purchased this property in 1911 specified that Eliza Williams Knighton was his wife. The mortgage which Abe Knighton executed on the whole of the property in November, 1913, specified that he was "a divorced man." Harman, in his answer, alleges that he "believed that said Abe Knighton was the sole and only owner of said property, and the conveyance records of Caddo Parish, La., disclosed absolutely nothing to the contrary, and appearer had no intimation whatever to the contrary." These allegations show that Harman did examine the records. If he examined them to any extent, he certainly would ascertain if the property stood in the name of Abe Knighton, and when he came to pass upon that deed, he found written into it a stipulation to the effect that Abe Knighton, when he purchased that property, was the husband of Eliza Williams Knighton. And again, in the examination he practically says he made of the records, Harman certainly examined the mortgage which Abe Knighton executed upon this property, and of which he became the owner. When he did, he found written into the body of it a statement that Abe Knighton was a divorced man at that time. It is therefore apparent that Harman not only saw from the deed under

which Abe Knighton purchased the property, but also from the mortgage which Abe Knighton executed upon the property, that Abe Knighton's marital status was a serious issue in his title. Here we have the deed of purchase of Abe Knighton and the mortgage he executed upon the property both notifying Harman that there were community rights involved in the property, which, under the authorities, destroys Harman's good faith. In our view, Harman at least was not technically in good faith, and unless he was, his good faith possession cannot be maintained.

■ It appears that Abe Knighton continued to possess the property from the time he bought it in 1911, until his death in 1930, even including the four and one-half years covering the time in which Harman held title, and the argument is made that he possessed it as tenant of Harman during Harman's ownership, and there were filed in evidence in support of this claim several rent receipts; but there is not a word of testimony to identify these receipts as covering rent on the property involved in this suit. Of course, proof could not be made by Abe Knighton, since he had died before the trial; but certainly these receipts could have been identified by Harman, if indeed they covered rent paid by Abe Knighton for this property. But for some reason Harman did not testify. There was no explanation made why he did not, and inasmuch as he was available to the defendant and she did not use him, a strong presumption arises against her to the effect that he would not have identified these receipts as covering rents paid by Abe Knighton on the property in question.

If Harman had testified, he might have sufficiently cleared up the records so as to prove himself purchaser and possessor in good faith and he might have cleared up the question of Abe Knighton's possession during his period of ownership.

■ Even, however, if it was held that Harman was a good-faith possessor of this property, still the plea of prescription of ten years could not be maintained because you could not add to his four and one-half years' possession five and one-half additional years of the possession of Abe Knighton. Ordinarily, a possession begun in good faith may be afterwards continued in bad faith and still the two periods constitute a basis for the plea of ten years' prescription; but that could not be true with the possession of Abe Knighton. He was certainly the co-owner of this property with his former wife, Eliza Williams Knighton, at the time he executed the mortgage which formed the basis of Harman's title, and later continued as co-owner with plaintiff in this case after her mother died, up until Harman foreclosed the mortgage. He could not, after the lapse of four and one-half years, repurchase the property and assume a different status toward the property and those interested in it than what he occupied in the beginning. He executed the mortgage on the whole of the property, well knowing that he owned only one-half of it. It would be rewarding his fraudulent act to say that he could repurchase the property from the man to whom he mortgaged it with a changed status towards the property and those who were his co-owners at the time he executed the mortgage. When he purchased this property from Harman in January, 1920, he again became plaintiff's co-owner of this property, and thereafter no possession he held could form a basis of prescription against his co-owner. The plea of ten years' prescription is accordingly overruled.

### On Motion for Rehearing.

Since defendant has argued before this court with apparent seriousness his bill of exceptions to the ruling of the trial court in refusing his motion to reopen the case, we deem it proper to affirmatively pass upon that question.

■ Motions of this kind address themselves to the sound discretion of the trial court, and unless there is abuse of that discretion, the appellate court will not disturb the trial judge's ruling. In this case we not only do not find that the trial judge abused this discretion, but we think his ruling was eminently correct. Even if the case had been reopened and defendant had proved the things alleged in his motion, nothing would have been accomplished. Such proof would have been purely negative. We are, therefore, in full accord with the trial judge's ruling on this question.

### Plea of Estoppel of S. J. Harman against Call in Warranty of Defendant.

■ There is no serious dispute over the fact that this call in warranty has no merit. Abe Knighton, through the mortgage he executed, became S. J. Harman's warrantor, and then S. J. Harman redeeded the property to Abe Knighton and became his warrantor. When, therefore, Abe Knighton repurchased the property, his obligation of warranty and the obligation of S. J. Harman as warrantor merged and became extinguished by confusion on the theory that Abe Knighton could not be both creditor and debtor. Furthermore, S. J. Harman had the same right to call Abe Knighton or his heirs into warranty as Abe Knighton or his heirs had to call Harman into warranty. So the warranty of the one balances or offsets the warranty of the other.

Therefore, the plea of estoppel urged by S. J. Harman against the defendant Mary B. Hatcher is sustained and her demands against Harman are rejected.

In view of these conclusions, we think the judgment appealed from, as amended by the agreement of counsel representing the parties in interest, filed in this court when the case was submitted, is correct, and it is accordingly affirmed; defendant appellant to pay all costs of both courts on the call in warranty against S. J. Harman, and to pay all costs of the appeal on the main demand.