**BROWNFIELD v. SOUTHERN AMUSE-
MENT CO., Inc., et al.
No. 6088.**

Court of Appeal of Louisiana.
Second Circuit.
Feb. 7, 1940.

Rehearing Denied March 6, 1940.

Writ of Certiorari and Review Granted
April 29, 1940.

Dismissed by Supreme Court Nov. 4, 1940.

Cook, Cook & Egan and E. W. & P. N. Browne, all of Shreveport, for appellants.

Lee & Lee, of Shreveport, for appellee.

DREW, Judge.

Plaintiff, as an employee of the Southern Amusement Company, Incorporated, sued it and the New Amsterdam Casualty Company and the Great American Indemnity Company of New York, with whom it carried compensation insurance on its DeSoto Theatre, of Mansfield, Louisiana, for judgment for 200 weeks at $17.55 per week, beginning with May 13, 1938, and for medical expenses in the sum of $153, al-leging as a basis therefor that on or about May 13, 1938, while in the employment of the Southern Amusement Company, Incorporated, and in the performance of her duties as such employee, she fell and broke her right arm in two places in the elbow joint, and as a· result suffered permanent loss of the use of same in excess of 90 per cent thereof.

In her petition, plaintiff alleges that she was employed by the Southern Amusement Company, Incorporated, as manager of its DeSoto Theatre, in the town of Mansfield, on or about August 1, 1937, and has been so employed constantly by said company since that time; and that her duties as such manager, among others, were as follows:

(a) The typing and writing of reports and the answering and taking care of the general correspondence;

(b) Supervising the daily operations of said theatre in the exhibit of moving pictures and selling tickets to such exhibits in said theatre;

(c) Checking and supervising all the outdoor advertising of pictures ' shown at said theatre; and

(d) The transporting of films to and from Shreveport, Louisiana, for said De-Soto Theatre, of pictures shown' at said theatre.

That in the performance of the duties referred to in subdivisions (c) and (d), it was necessary for her to use her automobile and that she was required to use and did use her automobile daily in the performance of said duties; that all of said duties were incidental thereto and arose out of the business of her employer and especially its business as owner and operator of the DeSoto Theatre at Mansfield, and that said duties were both of a hazardous and nonhazardous nature.

Plaintiff further alleged that she received compensation at the time of said injuries, $30 per week, six days to the week, and that she is entitled to 90 per cent of 65 per cent of the wages she was earning at the time of the injury during the period of 200 weeks; i. e., 90 per cent of $19.50 per week, or $17.55 per week over a period of 200 weeks, beginning with May 13, 1938.

She also alleged that she incurred expense in connection with her injuries; i.e., medical bill, nurses' bill and medicine bill, amounting to $153.

The New Amsterdam Casualty Company appeared and filed:

1. An exception of misjoinder of parties, defendant alleging as the ground therefor that at the time of said accident it had no outstanding and valid contract of insurance with the Southern Amusement Company; and

2. An exception of vagueness, alleging as a ground therefor that while the petition set forth that exceptor and the Great American Indemnity Company, a co-defendant, each was carrying a policy of insurance for the Southern Amusement Company, Incorporated, by whom the plaintiff was employed, insuring plaintiff against injury under the Workmen's Compensation Laws of Louisiana, said petition did not set forth the details of said contract of insurance.

These exceptions were heard and overruled. Whereupon the defendants all filed an exception of no cause or right of action, alleging as the grounds therefor that the claim asserted by the plaintiff was vested in the community existing between her and her husband and that she was without right to prosecute the same and, reserving all rights under said exceptions, all defendants filed answers admitting the injury alleged upon and averred that plaintiff's duties were of a nonhazardous nature.

The Southern Amusement Company, Incorporated, and the Great American Indemnity Company of New York admitted that the Amusement Company, Inc., had compensation insurance, as alleged, but the New Amsterdam Casualty Company, while admitting that it had a policy outstanding at the time of the injury, averred that subsequent to the injury this policy was cancelled on the ground that it was issued in error upon the application of the Southern Amusement Company, Inc., and the Great American Indemnity Company; that, therefore, it was not in fact an insurer of the Southern Amusement Company, Inc., at the time of the injury, but if the court finds to the contrary, then it asks that it have judgment against the Southern Amusement Company, Inc., and against the Great American Indemnity Company for the amount of the judgment rendered against it.

Prior to the case being set for trial, plaintiff's husband intervened, setting up in his intervention that he had interest in the success of the plaintiff in the suit and that if for any reason the claims asserted by her were not her property but held to be a community asset, then in that event he prayed for the same judgment against defendants in behalf of the community as was prayed for by plaintiff in her own behalf, in her original and supplemental petition. All defendants excepted to the petition of intervention on the ground, (a) That it failed to state a right of action; and (b) That it was barred by the period of peremption fixed in Section 31 of Act 20 of 1914, as amended.

The exception of no cause or right of action directed against the plaintiff and the exceptions of no right of action and of peremption directed to the intervention were separately heard by the court and, after due consideration, the exceptions of no cause or right of action against the plaintiff were overruled and the exceptions of no right of action and of peremptions against the intervenor were referred to the merits. Thereafter, in due course, the case was tried and resulted in a judgment sustaining the exceptions of no right of action against the intervenor and dismissing same; and granting recovery to the plaintiff in solido against the defendants for 200 weeks at $17.55 per week, together with medical expenses in the sum of $153, subject to a credit of $58.50 previously paid, with legal interest on each weekly payment due from date of judgment until paid and all costs of this suit, and rejecting the alternative demand of the New Amsterdam Casualty Company against its co-defendants for 50 per cent of the judgment rendered against it. From this judgment all defendants prosecute this appeal.

From plaintiff's standpoint, two questions are before the court on this appeal for consideration:

(1) The correctness of the action of the trial court in overruling the exception of no cause or right of action filed by all defendants; and

(2) The correctness of the judgment of the trial court on the merits.

We shall discuss these in the order named.

The exception of no cause or right of action is based on the fact that plaintiff is a married woman and the theory that compensation, when collected, would become a part of the acquêts and gains of the community and, therefore, her husband is the only one who could sue for and stand in judgment in a compensation suit arising out of an accidental injury to his wife.

It is defendants' theory that compensation is paid in lieu of wages and, since wages received by the wife are a part of the community, therefore compensation is also.

The compensation action has yet to be defined by the courts. It has been held not to be an action on contract or in tort or on insurance. We are of the opinion it stands by itself and is properly defined as a compensation action. If we are correct in this, we need look no further than the act itself to find who has the right to stand in judgment in such an action. We think the act makes it clear that funds received as compensation payments do not fall into the community of acquêts and gains just as wages do, for the act prohibits the attachment or seizure of compensation awards by creditors of the compensation payee. There are many other provisions of the act which demonstrate that compensation payments are treated and are to be treated differently than any other funds awarded to a claimant by the courts. The Compensation Law is a separate and distinct law from any other or branch of law and is governed solely by the provisions of the act creating it.

The act provides that only the employee or his dependents have the right to sue for injuries or death of the employee. If the employee be injured and not killed, no one other than the employee (except in the case of minors, for which exception the act provides) is entitled to sue. In cases where the employee is accidentally killed, the act specifically provides which dependent may enter suit. In case of the accidental death of the wife, who was an employee, the husband who was living with her at the time of her death is permitted to sue only when he is mentally or physically incapacitated from wage earning. It is clear to our minds that an able-bodied husband has not the right to sue for compensation under Act No. 20 of 1914, as amended, when his wife, an employee, is accidentally killed, and neither has he the right to sue for the recovery of compensation when she is only injured.

No one, other than the plaintiff in this case, has the right to stand in judgment here.

The exceptions of no cause or right of action were correctly overruled below.

The case on its merits is fairly simple, since there is no dispute as to the facts.

Plaintiff entered the employment of defendant, Southern Amusement Company, Inc., on August 1, 1937, as manager of its DeSoto Theatre, located at Mansfield, Louisiana. Her duties consisted of:

(a) The typing and writing of reports and the answering and taking care of the general correspondence;

(b) Supervising the daily operations of said theatre in the exhibit of moving pictures and selling tickets to such exhibits in said theatre;

(c) Checking and supervising all the outdoor advertising of pictures shown at said theatre; and

(d) The transporting of films to and from Shreveport, Louisiana, for said DeSoto Theatre, of pictures shown at said theatre.

In the performance of the duties referred to in (c) and (d) above, it was necessary for plaintiff to use an automobile and she did use one daily in putting out and supervising the putting out of advertising matter over the town of Mansfield and in adjoining towns, and she used her automobile for the purpose of transporting films from Shreveport to Mansfield when they would arrive in Shreveport too late to reach Mansfield in time for the show by the usual course of transportation. All of these duties were incidental to and arose out of the business of managing and operating the DeSoto Theatre. Due to a weak ankle, plaintiff was unable to drive her automobile and her husband drove for her, under her control and supervision and pursuant to her direction. He was not employed by the Southern Amusement Company, Inc., and received no compensation from it for his services. He acted solely as plaintiff's agent in driving the automobile. For all of her services, plaintiff was paid a salary of $30 per week.

It was plaintiff's duty to sell tickets and to keep watch on the screen, also to see that the picture was properly shown. The ticket booth was so arranged that she could do both. The floor of the ticket booth was raised about six inches higher than the regular floor. When in the booth plaintiff occupied a chair, which was on the raised floor. The accident occurred as she attempted to turn her chair in order to look at the screen. One leg of the chair slipped off the raised part of the floor and caused her to fall and break her arm in or near the elbow. The record discloses that plaintiff has a 90 per cent. total and permanent

disability to her right arm, caused by the accident and injury. It is very certain that she is entitled to recover as prayed for, if she comes under the provisions of the act.

■ It has been repeatedly held that an employee whose duties require the operation or use of an automobile is engaged in a hazardous occupation. Wood v. Peoples Homestead & Savings Association, La. App., 177 So. 466; and many other cases cited therein; also Hecker v. Betz, La. App., 172 So. 816.

It can make no material difference whether plaintiff ·was driving the automobile or having it driven by her agent, the fact is that she was required to use the automobile and did use it.

■ It therefore follows that plaintiff was employed partly in a hazardous occupation and partly in a nonhazardous occupation, and that she was accidentally injured while engaged in the nonhazardous part of the employment.

We are of the opinion that plaintiff is entitled to recover against her employer under the rule in the following decisions: Byas v. Hotel Bentley, Inc., 157 La. 1030, 103 So. 303; Youngblood v. Colfax Motor Company, 12 La.App. 415, 125 So. 883.

■ Both insurance companies, made defendants herein, had issued policies to the Southern Amusement Company, Inc., covering compensation claims made against it. Insofar as plaintiff is concerned, both policies were in effect at the time of the accident, as neither had been cancelled. She is therefore entitled to judgment against both insurers of her employer.

This brings us to the contest between the two insurers. The Great American Indemnity Company admits that its policy issued to the insured is in effect and binding on it. It also contends that the policy of the New Amsterdam Casualty Company is in effect and binding on it and that plaintiff's judgment should be for 50 per cent. of the whole against each company, or that it should have judgment over and against the New Amsterdam Casualty Company for 50 per cent. of the amount it is cast for.

The New Amsterdam Casualty Company contends that its policy was never in effect as to the insured Amusement Company or the Great American Indemnity Company for the reason that it was issued through error and for the further reasons that it was cancelled "flat" at the request of both the insurer and the Great American Indemnity Company and the premium returned and accepted by the assured, and that they both are now estopped to claim under said policy.

In disposing of these contentions, the lower court said:

"Prior to the time the local theatre was sold to the Southern Amusement Company, on or about July 23, 1937, it had been carrying its employer's liability insurance with the New Amsterdam Casualty Company, and about two days thereafter, on or about July 25, 1937, the Southern Amusement Company took out a policy with the Great American Indemnity Company. This policy was secured· by the president or manager of the Southern Amusement Company through an agency at Lake Charles.

"On October 5, 1937, the New Amsterdam Casualty Company renewed its policy in behalf of the Southern Amusement Company, which policy was written by its local agency, McFarland, Peyton & Guy, and it appears that the premium of $34.00 was paid here. The plaintiff was injured on May 13, 1938, at which time the Southern Amusement Company was insured by both of the defendant insurance companies. After the injury was received by Mrs. Brownfield, it was discovered by the Southeastern Compensation Rating Bureau that both of the defendant insurance companies were carrying the same insurance on the Mansfield, plant, or there was a double coverage. It seems that the Southeastern Rating Bureau is a clearing house for the various insurance companies in this territory. While it has no legal standing as such, but it appears by agreement the insurance companies employ the agency to adjust any differences that may arise between the various insurance companies of this section.

"After discovering the double coverage, the Rating Bureau began writing letters to the two companies advising that one of them drop the insurance on the Mansfield Theatre and, in order to clear up the matter, it seems that the New Amsterdam Casualty Company or its agency placed a rider on the policy previously issued by them to cover the Mansfield Theatre only. As will be seen from a letter written by the local agency of the Great American Indemnity Company at Lake Charles, the Southern Amusement Company's president did not know that he had a policy with the New Amsterdam Cas-

ualty Company, but the two policies continued in effect, neither company cancelling its policy until the fall of 1938. The policy of the New Amsterdam Casualty Company expired by its terms on October 5, 1938, and after this date, or the expiration as aforesaid, the manager, in the absence of the president of the Southern Amusement Company, returned the policy to the agency at Mansfield of the New Amsterdam Casualty Company which sent its check to cover the amount of the premium paid of $34.00. This is shown by photostatic copy of draft marked 'Defendant 2'. In order to more clearly understand the correspondence and actions of the insurance companies and the employer, the Southern Amusement Company, I refer to photostatic copies of vouchers and letters filed in evidence.

"The defendant, Great American Indemnity Company, concedes that it had in force a legal policy to cover the employees of the Southern Amusement Company who would come under the Compensation Act, but denies that the plaintiff was so covered, because she was engaged in an occupation that was not necessarily hazardous, but the New Amsterdam Casualty Company contends that it issued its policy through error.

"Perhaps there was an error in the beginning, but it was duly written by the agency of the New Amsterdam Casualty Company at Mansfield, and the Company had been paid the premium, and it is possible that the president of the Southern Amusement Company was in error in not recalling that he had already taken out insurance. But the action by the Mansfield office of the New Amsterdam Casualty Company, many months after the writing of the policy, and after the discussion by the Southeastern Rating Bureau, shows it was fully informed that there existed another policy covering the Mansfield Theatre, and it is my opinion that for several months after the injury to Mrs. Brownfield, all parties knew that there was a double coverage and acquiesced in the double coverage, because neither of the insurance companies were willing to cancel their contract with the Southern Amusement Company. Therefore, I have reached the conclusion that at the time Mrs. Brownfield was injured, there existed two legal contracts of insurance to cover the employees of the Southern Amusement Company on its DeSoto Theatre, and neither of them can successfully dispute their liability to the plaintiff in this case.

"Now, the question is being argued at considerable length on the plea of estoppel relied on by the New Amsterdam Casualty Company. The New Amsterdam Casualty Company contends that the Southern Amusement Company and the Great American Indemnity Company are estopped to contend that they are liable for the reason that they had urged for some time that the New Amsterdam Casualty Company should cancel its policy, and thereafter it was cancelled and the premium returned.

"To discuss all the cases cited by counsel for the Great American Indemnity Company would take more time than I have to spare for this particular case. We will first discuss whether or not this policy of the New Amsterdam Casualty Company was legally cancelled, insofar as the Southern Amusement Company and the Great American Indemnity Company are concerned. On the question of estoppel, I am unable to see how the New Amsterdam Casualty Company has been led into error or has suffered loss, due to any statement or contention made by the Southern Amusement Company or the Great American Indemnity Company because they did not cancel their contract until it had expired on the face. However, it could not expire to the prejudice of interested parties if there existed at the time of its expiration any legal liability growing out of its contract with the Southern Company. We quote excerpts from 10 Ruling Case Law, 689, 690:

" 'If a man by his statements or behavior leads another to do something which he would not have done but for the expression of that language or the exhibition of such behavior, such first man shall not be allowed to deny his utterance or act to the loss, injury or damage of the other one. * * *

" 'The cases themselves must be looked to and applied by way of analogy rather than rule. The following, however, may be ventured as the sum of all cases: That a person is held to a representation made or a position assumed, where otherwise inequitable consequences would result to another who, having the right to do so under all the circumstances of the case, has, in good faith relied thereon. Such an estoppel is founded on morality and justice, and especially concerns conscience and equity. * * * Furthermore, generally representations from which an estoppel may raise must relate to the existence of some past or present fact.'

"One cannot be estopped by the conduct of another who was without authority to bind the one claimed to be estopped. Pope v. Most Worshipful [St. John's] Grand Lodge, 9 La.App. 420, 121 So. 259; Robert [Hayne] Tarrant, Inc., v. [Max] Barnette Furniture Company, 17 La.App. 156, 134 So. 910.

"The same authority, however, under Section 25, Ruling Case Law, 657, states that the party misled must be misled to his injury. We quote: 'The final element of an equitable estoppel is that the person claiming it must have been misled into such action that he will suffer injury if the estoppel is not declared. That is, the person setting up the estoppel must have been induced to alter his position, in such a way that he will be injured if the other person is not held to the representation or attitude on which the estoppel is predicated.' See, also, 21 Corpus Juris, 1119, verbo Estoppel.

"In Louisiana the doctrine and rule of estoppel as above set forth has been recognized many times. Federal Land Bank v. Sanders [La.App.], 167 So. 140; McWilliams v. Geddes & Moss Undertaking & Embalming Company [La.App.], 164 So. 144; Wilkinson v. Macheca, 158 La. 183 [103 So. 733]; Louisiana Oil Refining Corp. v. Williams, 170 La. 218 [127 So. 606]; Blunson v. Knighton [La.App.], 140 So. 302.

" 'Estoppel is not favored in law, especially where the party seeks to set aside a fraudulent sale or to uncover a simulated transaction. Plea of estoppel held not available where party pleading it was not induced by plaintiff to change position. Plea of estoppel held not available, where party pleading it was not induced by plaintiff to change his position or to act differently from the way he would have acted otherwise.' Wilkinson v. Macheca, supra [158 La. 183, 103 So. 734].

 "The manager of the Southern Amusement Company at Lake Charles, Mr. A. A. Thornton, testified that he was without authority to return the policy of the New Amsterdam Casualty Company and request a cancellation of the same. The same testimony in effect was given by the president of the company, Mr. George Baillio, who was sick in a hospital when the policy was cancelled and the premium returned. I am convinced that the cancellation which took place several months after the injury to the plaintiff and after the expiration of the policy of the New Amsterdam Casualty Company was not binding on the plaintiff, the defendants, the Southern Amusement·Company and Great American Indemnity Company for the reason that Mr. Thornton was without authority to cancel the insurance.

"It is true the Southern Amusement Company owes the New Amsterdam Casualty Company the return of the premium paid of $34.00, but they have not requested a return of the premium received by them.

"It is true that there is a double coverage and the amount due plaintiff will have to be paid 50 per cent by each of the insurance companies. This is a matter of adjustment of the claim between the parties defendant under a judgment in solido, and I see no reason why in this decree there should be any other judgment except one in solido by the plaintiff against all of the defendants for the payment of the judgment herein rendered."

"Hal A. Burgess,
"Judge of said Court."

We fully agree with the disposition made of these issues by the lower court.

 Plaintiff has answered the appeal and complains of the judgment below wherein it fixed the date interest was to begin running as the date of the judgment and also that the judgment fails to fix the date from which weekly payments should run. The complaint is well-founded and the judgment of the lower court is amended by fixing the date for beginning the weekly payments as May 13, 1938, and awarding interest at the legal rate on each weekly payment from date said payment was due; in all other respects, the judgment of the lower court is affirmed, with costs.