LABOSTRIE v. WEBER

(November 17, 1930. Opinion and Decree.)
(December 15, 1930. Rehearing Refused.)

Jesse C. McGee, of New Orleans, attorney for plaintiff, appellant.

Titche, Kiam & Titche, of New Orleans, attorneys for defendant, appellee.

HIGGINS, J. This is a suit under the compensation statute brought by an employee, claiming to have been permanently disabled as a result of an injury sustained in the course of his employment and asking for appropriate compensation. The record shows that the defendant, Frank Weber, conducted a barber shop and also operated a business of furniture moving, us-

ing for that purpose a motor truck. The plaintiff, George Labostrie, a negro laborer, was employed by defendant to drive his motor truck and to assist in loading and unloading it. However, Labostrie was not injured while discharging those duties, but while engaged at work upon the demolition of a building used by Weber to house his motor trucks, preparatory to the erection of another and more suitable building for that purpose. While so engaged, a portion of the roof of the building collapsed and some of the falling timber struck Labostrie and severely injured him.

The defenses are:

First, that Labostrie was not injured in the course of his employment:

Second, that the employer's business was not enumerated among those occupations classified as hazardous under the Workmen's Compensation Law.

Third, that the injury from which disability is claimed to have resulted did not arise out of or in the course of plaintiff's employment.

Fourth, that plaintiff was an independent contractor and not an employee.

There was judgment in favor of the defendant, dismissing plaintiff's suit, and plaintiff has appealed.

Taking up these defenses in the inverse order, we observe, with reference to the last defense to the effect that plaintiff is an independent contractor, that the language of paragraph 8 of section 3 of Act No. 85 of 1926, amending section 3 of Act No. 20 of 1914, reads as follows:

"A person rendering service for another in any of the trades, businesses or occupations covered by this act (other than as an independent contractor, which is expressly excluded hereunder) is presumed to be an employee under this Act. The term 'independent contractor' shall be considered to mean, for the purpose of this act, any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished."

Plaintiff in this case was a laborer; consequently it is obvious that he does not come within the terms of the definition given in the act of an independent contractor.

The next point we will consider is the contention that, at the time of the accident, the work upon which Weber was engaged was not incidental to or connected with his employer's business. This contention merits scant attention, since it is very clear that a building used to house the truck used by the defendant in the prosecution of his business as a furniture mover was connected with defendant's business, and work upon the destruction or construction of such a building are services incidental thereto.

Did Weber's business come within the enumeration of occupations classified as hazardous under the compensation statute? Subsection (a) of paragraph 2 of section 1 of Act 20 of 1914 reads as follows:

"Every person performing services arising out of and incidental to his employment in the course of his employer's trade, business or occupation in the following hazardous trades, businesses and occupations: * * *
"The installation, repair, erection. removal or operation of boilers, furnaces, engines and other forms of machinery."

In considering this section, the Supreme Court, in Haddad v. Commercial Truck Co, 146 La. 897, 84 So. 197, 9 A. L. R. 1380, held that the operation of a motor truck was a hazardous occupation because motor trucks are propelled "by gasoline engines or motors, which by the use of gasoline produce their own energy or motive power. The driving of such motortrucks necessarily involves the operation of such engines." The court then gives a definition of the word "engine," and concludes that the operation of a gasoline engine is as much contemplated by the statute as hazardous as the operation of a stationary engine.

It follows, therefore, that an employer, who is engaged in moving furniture by means of a motor-driven vehicle, is engaged in an occupation which comes within those enumerated in subsection (a) of paragraph 2 of section 1 of Act 20 of 1914. Consequently, we find as a fact that Labostrie, by reason of his employment in the operation of a motor-driven vehicle, was engaged in a hazardous occupation. See, also, Beebe v. McKeithen Construction Co., 5 La. App. 179; Plick et al. v. Toye Bros. Auto & Taxicab Co., 13 La. App. 525, 127 So. 59.

Finally, it is contended that Labostrie was not injured in the course of his employment. This argument is based upon the fact that Labostrie was not driving the motor truck when injured. Hence it is said that his injury was not received during and did not arise out of his employment. He was attempting to remove the roof from the building, when a part of it fell and injured him. If he had been hurt while standing still upon his employer's premises, in a location where his business required him to go, he would, nevertheless, be entitled to recover, because, it having been established that his employer's business was hazardous, he could recover under the Compensation Statute, whether his injuries were received while engaged in the hazardous or non-hazardous feature of his employment; no distinction being made in the act between the duties of an employee which may be said to be hazardous and those which are otherwise.

In Byas v. Hotel Bentley, 157 La. 1030, 103 So. 303, 304, the court said:

"In the present case, plaintiff's husband was admittedly engaged in both hazardous and non-hazardous branches of his employer's business. It was all one employment for which he received but one compensation. Therefore, it is immaterial whether his non-hazardous duties constituted his major employment to which his hazardous duties were merely incidental, or vice versa. The fact remains that the deceased met his death while actually engaged in performing duties, whether main or incidental, called for by his employment."

See, also, Ferguson v. Cady-McFarland Gravel Co., 156 La. 871, 101 So. 248; Dyer v. Rapides Lumber Co., 154 La. 1091, 98 So. 677.

We are unable to rely upon the testimony of plaintiff and his wife as to the extent of his injury for the reason that they are shown to have indulged in misstatements of fact and are thus discredited. It sufficiently appears, however, from other testimony in the record, that the plaintiff was severely hurt. Indeed it is

not disputed. Moreover, the medical testimony shows that plaintiff was confined to the Charity Hospital from May 13, 1929, to July 5, 1929, suffering from five fractured ribs, a severe concussion of the brain, a fracture of the skull, and a fracture of the parietal or collar bone, lacerated wound of the scalp, multiple brush burns and contusions, and possible fracture of the cervicle vertebrae. It was necessary to tap the subarachnoid space to withdraw fluid in order to relieve pressure on the spinal column. The medical testimony further establishes that the disability in cases of such injury would be from three to eight months, with probable permanent injury. Neither doctor had recently examined the plaintiff, and therefore were unable to say if he was still disabled from doing manual labor, as he claimed.

We feel that under the circumstances of the case, justice will be done by awarding compensation as of total disability for a period of 32 weeks, at 65 per cent of $15 per week.

It is therefore ordered, adjudged, and decreed that the judgment of the district court be, and it is, annulled, avoided, and reversed; and it is now ordered that there be judgment herein in favor of plaintiff, George Labostrie, and against defendant, Frank R. Weber, in the sum of $9.75 per week for 32 weeks, beginning May 13, 1929, with 5 per cent interest per annum upon each installment from its due date until paid, defendant to pay all costs in both courts.