## HECKER v. BETZ. *

### No. 16457.

Court of Appeal of Louisiana. Orleans.

March 8, 1937.

*Rehearing denied April 19, 1937.

Stanley McDermott and Louis R. Alba, both of New Orleans, for appellant.

Henry & Kelleher and A. M. Suthon, all of New Orleans, for appellee.

JANVIER, Judge.

This is a suit for workmen's compensation brought by John Paul Hecker against William Betz under Act No. 20 of 1914, as amended. There are two defenses: (1) That Hecker, a plumber, who, when injured, was installing plumbing fixtures in a building which was being remodeled by Betz, its owner, was not an employee of Betz but was an independent contractor; and (2) that even if Hecker could be considered as an employee, Betz' business, that of undertaker, was not hazardous, and, therefore, his employees were not afforded protection by the compensation laws.

In the district court there was judgment dismissing the suit, and Hecker has appealed.

Betz, for many years engaged in business in this city as an undertaker, found it necessary to make substantial changes in the building which he used not only as a residence but also as a funeral home for his customers and as a garage for the automobiles used in his said business.

Though it cannot be said that he had ever engaged in the business of building and remodeling, he had previously had

some slight experience in construction work on buildings belonging to himself, and therefore concluded that, instead of entering into a building contract with a general contractor he would supervise the remodeling himself and would employ various experts in their respective trades to do the work for him. He negotiated with Hecker, who, though experienced as a plumber, was not licensed as such, and finally it was agreed between them that Hecker would purchase and install the plumbing fixtures and that Betz would pay for the fixtures without any profit to Hecker and would pay Hecker at the rate of $1 per hour for his services. It was also agreed that Hecker should have a helper (a Mr. Heumann) and should receive for the helper $1 per hour. Although Betz did not know of the arrangement between Hecker and Heumann, it was agreed by them that Hecker should retain out of Heumann's wages $1 for each day to defray the cost of Hecker's automobile, which was used by both in going to and from work and in bringing ice for ice water and for other purposes in which both seem to have been interested. Since Hecker was not a licensed plumber, it was agreed that a friend of his, who was a licensed plumber, should obtain the necessary certificate after the completion of the work.

During the progress of the work, while Hecker was striking a piece of pipe with a ball-peen hammer, a piece of metal flew into the air and entered his eye and injured it so severely that the eye was later removed by a surgeon. Unable to agree with Betz and his insurer regarding compensation, Hecker brought this suit, in which he claims compensation at the rate of $20 per week for 100 weeks and $250 to compensate him for his medical and hospital expenses.

We first consider whether Hecker was an employee or an independent contractor. There was no contract between him and Betz under which he was to do the work for a fixed contract price. He had been asked by Betz for an estimate as to the probable cost of the work and he had told Betz that this would probably be about $225 or $230, but the record shows plainly that he did not agree to do the work for that price and that, whatever the cost might be, Betz was obligated to pay it. It also shows that the estimate made by Hecker was not carefully prepared by him

with the idea that it was to determine the amount of his compensation, but that it was nothing more than a rough guess which he made at the request of Betz, so that the latter might have a general idea as to what his plumbing work would cost him.

That there was no fixed contract price seems to be not of supreme importance. It was held that one was an independent contractor "who agreed to build a barn for the respondent, being paid by the hour, but hiring other men, and making some profit on their wages as well as on the materials furnished by him, and doing the work from general plans without any supervision as to methods." Schneider's Workmen's Compensation Law (2d Ed.) Vol. 1, citing Crittenden v. Robbins, 1 Conn. Comp.Dec. 523. But we think that the absence of a contract price cannot be entirely lost sight of and, when we note here that Hecker made no profit on the materials purchased and that the profit which he made on the wages of his helper resulted from the fact that the helper used his automobile, and when we further consider that his work was entirely under the supervision of Betz and of a general foreman employed by Betz, we find that the facts of the case are substantially different from those of the Crittenden Case to which we have referred. Furthermore, when we refer to the testimony of Betz, we cannot find that there was in his mind any idea that he was contracting with Hecker in any other capacity than as an employee to work on an hourly wage basis, entirely subject to his supervision and subject to dismissal at his pleasure. When asked, "Did you have any contract of any kind with Mr. Hecker?" Betz answered, "No, sir." Later he was asked the question, "Were Mr. Hecker and Mr. Heumann (the helper) at all times to be subject to be discharged by you at any time, any day?" He answered, "Yes, sir." He also admitted that he "had the absolute final say as to what should be done, where the work should be done in the building, and all that." We entertain no doubt that, under such circumstances, Hecker was merely an employee and our confidence in the correctness of our conclusion is increased when we read, in Schneider's Workmen's Compensation Law, Vol. 1, page 286:

"It would * * * appear safe to say that one indispensable element to his char-

acter as an independent contractor is that he must have contracted to do a specific work and have the right to control the mode and manner of doing it."

We find, also, that our Supreme Court, in Dick v. Gravel Logging Co., 152 La. 993, 994, 95 So. 99, 101, a case which involved the question of whether or not the injured claimant was an employee, or an independent contractor, in referring to our workmen's compensation statute, said:

"Its provisions should be liberally construed, so as to include all services that can be reasonably said to come within them."

We also note that, from the evidence to which we have referred and from which we have quoted, it appears that the elements of an independent contract were not present if the definition of "independent contractor" is correctly given in 39 C.J. § 1517, for there we are told that:

"* * * An independent contractor is one who in rendering services exercises an independent employment or occupation and represents his employer only as to the results of his work and not as to the means whereby it is to be done. Generally the circumstances which go to show one to be an independent contractor, while separately they may not be conclusive, are the independent nature of his business, the existence of a contract for the performance of a specified piece of work, the employment of assistants by the employees who are under his control, the furnishing by him of the necessary materials, and his right to control the work while it is in progress except as to results. All these matters are to be taken into consideration in determining whether or not a party is an independent contractor."

We do not believe that the fact that Hecker agreed, through a friend, to produce the necessary certificate required by the building laws should be given any effect whatever in determining whether he was an independent contractor.

We next consider the nature of defendant's business, for the second defense is that that business is not hazardous and that, therefore, his employees are not within the protection of the compensation statute.

It is conceded that the business of undertakers or morticians, as they are nowadays wont to designate themselves, is not catalogued within those which the statutes recognize as hazardous per se. But it is contended on behalf of plaintiff that for either of two reasons the employee, Hecker, is protected by the statutes. In the first place, it is maintained that, since the business of erecting or remodeling structures is classified as hazardous, those employers whose main or principal business may not be hazardous are, nevertheless, engaged in a hazardous business if, in remodeling or erecting their business establishments, they, for their own account, undertake the hazardous business of construction, and, in the second place, it is maintained that an undertaker or mortician, who, in his business, uses motor vehicles, is to that extent engaged in a hazardous business since it has been repeatedly held that to work on or around motortrucks and vehicles is to engage in a hazardous occupation.

In presenting the first contention that a person who erects his own business establishment is, in erecting it, engaged in an occupation recognized as hazardous even if his principal business is not hazardous, counsel for plaintiff concede that the rule for which they contend should not apply when such a person builds his own residence, but they maintain it is the fact that the erection or construction work is done in connection with a business, trade, or profession that controls the situation, and, pointing to certain language used by the Court of Appeal for the Second Circuit in Blane v. Iglehart, 5 La.App. 17 (in which no recovery in compensation was allowed), they infer that, if the work there had been done in connection with a business, a contrary result would have been reached. The court said that the defendant "was a merchant, engaged in the sale of dry goods and ready-to-wear articles in the town of Natchitoches, Louisiana; that being desirous of having a home built for himself he contracted with plaintiff to build it for him; that the building of the dwelling was no part of his, Iglehart's trade, business or occupation nor incidental thereto." But that exact contention seems to have been presented to the Supreme Court in Shipp v. Bordelon, 152 La. 795, 94 So. 399, or, at any rate, the Supreme Court believed that that was the contention, and held that, if the principal business was not hazardous, the erection of a building to be used in that business was not within the contem-

plation of the statute. There the court found that the defendant, though a physician by profession, was also engaged in business as a farmer and that, in connection with his business as farmer, he decided to do some repair work on a building on his farm and employed the plaintiff as a carpenter. Plaintiff was injured and claimed compensation and the defense relied upon was that neither the profession of physician, nor the occupation of farmer, was hazardous, and that, therefore, the work done by the plaintiff, though in itself hazardous, was not within the contemplation of the compensation laws, since it is the nature of the employer's trade, business, or occupation which governs. The court held that the employer was engaged in two businesses and that the work done by the employee was in connection with the business of farming, but that there could be no recovery because farming is not a hazardous business and, therefore, employees, though engaged in a hazardous occupation, were not employed by an employer whose trade or occupation was hazardous. Note the following language:

"* * * it is not enough that the work done should be hazardous if it be not also incident to or in the course of the trade, business, or occupation of the employer which is within itself hazardous under the statutes."

It is true that in that case, as a result of an application for a rehearing, it was discovered that the building on which the carpenter had worked was not on the farm, but was in the city of Alexandria, and had no connection with the farm, but the court said that "this makes no difference in the result, for the defendant in no event was engaged, as a trade, business, or occupation, in building, erecting or repairing houses."

We, therefore, conclude that if the principal business of the defendant, to wit, undertaker or mortician, was not hazardous, and contained no hazardous features, there could be no recovery in compensation here by Hecker.

But when we consider the contention that, though an undertaker is not, as such, necessarily and ipso facto classified as engaged in a hazardous trade or business, one who is engaged in the operation of motor vehicles is, to that extent, engaged in such hazardous business, we find an argument not so easily disposed of. On the contrary, we think that it presents insurmountable obstacles to defendant's success in this case.

It has been many times held "that work on or in connection with a motor-driven vehicle is a hazardous employment within the contemplation of the compensation laws." Snear v. Eiserloh (La. App.) 144 So. 265, 266. In Haddad v. Commerical Motor Truck Co., 146 La. 897, 84 So. 197, 9 A.L.R. 1380, the Supreme Court held that one who in his business operates motor vehicles is engaged in a trade·or business recognized as controlled by the compensation statutes, and that an employee who is injured while operating such a vehicle may recover in compensation. See, also, Labostrie v. Weber, 15 La.App. 241, 130 So. 885, 887; Plick et al. v. Toye Bros. Auto & Taxicab Co., 13 La.App. 525, 127 So. 59; Beebe v. McKeithen Construction Co.,·5 La.App. 179; Richardson v. Crescent Forwarding & Transp. Co., Ltd., 17 La.App. 428, 135 So. 688;. Crews et ux. v. Levitan Smart Shops (La.App.) 171 So. 608. We find, then, that defendant was engaged in a business one portion of which was hazardous and was within the contemplation of the Workmen's Compensation Laws. In this regard the case presents facts somewhat similar to those found in Byas v. Hotel Bentley, 157 La. 1030, 103 So. 303, in which the Supreme Court held that, if an employer is engaged in a business which has both hazardous and nonhazardous features, an employee whose work brings him into contact with both features is protected by the compensation laws even if the injury which forms the basis of the claim for compensation is sustained while he is performing nonhazardous duties. That conclusion and the reasoning from which it results are most potent here and, we feel, make it necessary that we hold that an employer who is engaged, as Betz, in a business which has two features, one hazardous and one nonhazardous, and who, in furtherance of that general business, undertakes construction work which, in itself, is hazardous, should be held liable in compensation to those employees who are engaged in such hazardous work.

It should be noted here that the building, when completed, was to be used in part as a garage for the housing of defendant's automobiles. For this last reason, the case calls to mind our decision in Labostrie v. Weber, supra, in which we, after concluding that the employer, who

used a motor vehicle in his business, was to that extent engaged in a hazardous trade, business, or occupation, said further that the employee who was injured while "he was attempting to remove the roof from the building," which was used to house the employer's motortruck, might recover in compensation.

It may be argued that, as a result of our conclusion, any employer who undertakes to remodel his own business establishment thereby renders himself liable in compensation to an employee injured during such work. That this does not necessarily follow appears from the decision of the Supreme Court in Shipp v. Bordelon, supra. All that we now hold is that, if the building is being remodeled or reconstructed for use in a business which, at least to some extent, is hazardous, then those who do such reconstruction work are protected by the statute.

It is also suggested that if we hold that the remodeling of a business building is a part of the employer's business to such an extent as to make him liable to employees who, while so engaged, receive injuries, then an employer may not contract with some one else to do such work without retaining liability to the employees of such contractor, because section 6 of the statute (Act No. 20 of 1914, § 6, as amended by Act No. 85 of 1926, § 1) makes the employer liable to employees of the contractor when, by the contract, the contractor undertakes to do any part of the work in which the employer is engaged. We do not see that this unfortunate result will follow. Section 6 of the act has as its object the prevention of an employer from contracting away any part of his business without retention of compensation liability to those who may work either for him or for the contractor. If the erection of buildings or reconstruction thereof is a part of the regular business of the employer, then he may not contract away such work without retaining liability, but if it is not a part of his regular business, then he may completely avoid liability by making a contract under which some one else undertakes to construct the building for him. The results reached in Clementine v. Ritchie, 1 La.App. 296, and Horrell v. Gulf & Valley Cotton Oil Co., 15 La. App. 603, 131 So. 709, make this conclusion inevitable.

But, even though construction or remodeling work may not be a part of the regular business of the employer, if, in furtherance of his regular business, which is in itself hazardous, the employer undertakes such remodeling work, then he renders himself liable in compensation to those employees who may receive injuries while doing such work.

Our decision in White v. Equitable Real Estate Co., 18 La.App. 714, 139 So. 45, 46, is not authority for a view contrary to that expressed by us now, for there we found that the business of defendant was not hazardous for the reason that it had not itself undertaken to do the repairing of the building owned by it. We said:

" * * * the business of defendant was owning and renting of improved realty, which is neither hazardous, nor within the contemplation of the statutes."

If the defendant there had established the custom, as a part of its business, of making its own repairs, then it would have been engaged in a hazardous business and would have been in the situation in which we found the defendant in Clementine v. Ritchie, supra, in which we characterized as hazardous the business of "building and selling of homes."

Having found that Hecker sustained the loss of one eye as the result of an accident incurred while working for his employer in a hazardous undertaking, in which his employer was engaged, it follows that he is entitled to compensation at the rate of $20 per week for 100 weeks, and also to reimbursement for such medical expenses as he may have incurred. We find that he is obligated to Dr. Dimitry in the sum of $100, to Dr. Granger in the sum of $15, to Hotel Dieu in the sum of $34.05, and to Dr. Mitchell in the sum of $10, making a total of $159.05. There are two other items for which plaintiff claims reimbursement, one for $18 for the cost of a pair of eyeglasses and one for $10 for the cost of a glass eye. We are shown no authority in the statute nor in previous cases authorizing recovery on these two items.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is annulled, avoided, and reversed, and that there now be judgment in favor of plaintiff, Paul Hecker, and against defendant William Betz at the rate of $20 per week for 100 weeks, commencing the 21st of July, 1932, with interest at 5 per cent. on each installment from its due date until

paid, and for the sum of $159.05 and all costs.

Reversed.