## WOOD v. PEOPLES HOMESTEAD & SAVINGS ASS'N et al.

### No. 5409.

Court of Appeal of Louisiana. Second Circuit.

Oct. 29, 1937.

Rehearing Denied Dec. 3, 1937.

Theus, Grisham, Davis & Leigh, of Monroe, for appellants.

Oliver & Digby, of Monroe, for appellee.

DREW, Judge.

Plaintiff instituted this suit under the Workmen's Compensation Law of this state, Act No. 20 of 1914, as amended, alleging that while acting within the scope and course of his employment with defendant, he sustained an accidental injury which has rendered him totally and permanently disabled to perform work of an ordinary nature such as he was performing prior to the accident.

Defendants filed an exception of no cause or right of action in the lower court, but have specifically abandoned it here, and are now contesting plaintiff's claim on the following grounds: (1) That the trade, business, and occupation of the defendant employer is of a nonhazardous nature, and therefore the provisions of the Workmen's Compensation Act of this state did not apply to it; (2) that the work plaintiff was performing was nonhazardous; (3) that the accident did not arise out of and in the course of plaintiff's employment; (4) that plaintiff was not disabled by the accident from performing the same or similar work he had done prior to the accident; and (5) that plaintiff should undergo an operation or injectment treatment to cure his injury (a hernia), and that his failure to do so bars him from compensation for a period longer than the time a cure could be effected by such an operation.

On these issues the case was tried below resulting in judgment for plaintiff as prayed for, and defendants have prosecuted this appeal.

There is no serious dispute as to the following facts: Plaintiff was in the employ of defendant, People's Homestead & Savings Association, as superintendent of construction and repairs at a salary of $160 per month, and he was required to furnish his own automobile; that in the construction and repair department there were employed carpenters, painters, plumbers, truck drivers, paper hangers, etc. The cost of maintaining this department, including materials used, averaged about $5,000 per month, or $60,000 per year. A warehouse was maintained as headquarters for this department where materials were stored and where the employees were required to report each morning for instructions before starting to work. The truck was kept in this warehouse at night, and there was in said building a mechanical elevator used to transport the men and materials to the second floor.

Plaintiff's employer, hereafter referred to as the association, carried compensation insurance to cover all employees in the construction or repair department with the Travelers Insurance Company of Hartford.

The property owned by the association included both residential and business, and all was acquired by it through foreclosures on delinquent loans and in some instances by surrender of the property by the owners who were unable to meet their payments. The value of the property thus acquired was equal to the amount the association had out on loans. This property was rented by the association until such time as it could be profitably sold. The construction and repair department was used to keep this property in a state of repair; however, it

was also used to repair property not owned by the association, but on which it held mortgages, and, in one instance, had completely constructed from the ground up six houses on a plot of ground owned by it. In other instances, the department made repairs on property on which it intended to make loans; one specific case being the property owned by Mrs. Parker on which the Monroe Building & Loan Association held a mortgage and the defendant association herein had agreed with Mrs. Parker, in consideration of her including in the mortgage other property, to take up the loan and extend her time for payment. This Parker property consisted of twelve houses, all of which were reroofed, the porches fixed, steps repaired, and screens mended. All materials used on the Parker job was kept separate from that belonging to the association, as was all the material left over after this job was completed; plaintiff having been instructed by the president and manager of the association to do so for the reason Mrs. Parker intended to use it in repairing other property she owned. After the job was completed, the association charged Mrs. Parker with the cost of it, added it to the amount she already owed the Monroe Building & Loan Association, and took a mortgage on this particular property and other owned by her for the full amount, and paid off her indebtedness to the Monroe Building & Loan Association. In many cases, the association, through its construction department, almost completely demolished houses, sometimes leaving only a part of the foundation and one wall standing, and then rebuilt the house. This they termed remodeling.

When the HOLC began operating, a number of homeowners, whose houses were mortgaged to the defendant association, secured loans from the HOLC to liquidate their indebtedness to the defendant association. On every occasion the defendant was notified by the HOLC of the amount it was willing to loan on the property and the amount necessary to repair the property before the loan would be made, always giving the association the option of making the repairs and receiving from the HOLC the full amount available, or not making the repairs and receiving the amount available, less the estimated cost of repairs, and accepting the full amount available.

We have gone into much detail as to the activities of the construction and repair department of the defendant association because of the fact that defendant contends that in the case of McAllister versus this same defendant, decided by us on December 11, 1936, and reported in 171 So. 130, 131, we found as a fact that the defendant association was not engaged in a hazardous occupation, and did not come under the provisions of section 1, subdivision 2 of Act No. 20 of 1914, wherein one of the hazardous occupations defined is "work in any of the building or metal trades in the erection, construction, extension, decoration, alteration, repair or demolition of any building or structural appurtenances"; and that the above-cited decision is decisive of the case at bar. That would be true if the pleadings and facts brought out on trial of the two cases had been the same. The two cases are dissimilar in pleadings and facts. Under the pleadings and evidence in the former case, we found as a fact that "the sole and only work done by or through this department was on the property owned by defendant. The employees in this department did not at any time work on the property of anyone else, nor would they have been allowed to do so by defendant. Defendant did not, through this department or otherwise, do any repairs or construction work for the public or for anyone. It used this department solely to keep its own property in a state of repair." Then, under the above-quoted facts, we found defendant was not engaged in a hazardous business or occupation within the intendment of the Workmen's Compensation Law of Louisiana.

The testimony adduced on the trial of the case at bar clearly shows that the true facts were not proven in the trial of the McAllister Case. We have here an entirely different setup from that in the McAllister Case, and, under the facts in this case, we are of the opinion that the business and occupation of the defendant association was hazardous, under the provisions of the Workmen's Compensation Law of this state.

In the McAllister Case, after quoting from section 1, subdivision 2 of Act No. 20 of 1914, we said: "A mere reading of the above portion of the act makes it clear that the defendant herein is not liable for compensation unless his trade, business or occupation is, under the facts here, among other things, the erection, construction, repair, decoration, or alteration of buildings. In order for this to be its business, trade, or occupation, it would necessarily have to offer its services to others for a considera-

tion. The mere fact that it repaired its own buildings is not sufficient. One who rents property is not engaged in a hazardous business. In order to rent property it necessarily must be kept in a state of repair. What difference does it make whether there is one house to rent or several hundred? We think there is no difference. White v. Equitable Real Estate Company, 18 La.App. 714, 139 So. 45."

Defendant relies upon the part where we said, "in order for this to be its business, trade or occupation, it would necessarily have to offer its services to others for a consideration," and contends that, since it is not shown that the defendant association made any profit on the services rendered others, there was no consideration. We cannot follow this theory. It is unnecessary that a profit be made. It charged for its services and collected with interest. It performed work for others and collected for it. When it repaired the homes owned by its mortgagors, it made a charge for so doing, even though it was the actual cost of the repairs. It added this amount to the already existing mortgage, and collected it by the month at the usual high rate of interest charged by all such loan associations. It would be unreasonable to think that the repair or construction department of defendant association was operated at such a large cost just for the fun of doing so. It was a very important part of its business and occupation. It was necessary that plaintiff make use of an automobile in supervising this department's work; necessary that a truck be used by him to keep supplies and materials on the ground; and it operated a mechanical elevator in its warehouse where these materials were stored.

The second defense urged is that plaintiff's work was nonhazardous, and the third defense is that the accident did not arise out of and in the course of his employment; both of which we will deal with at the same time. In performing the duties required of him, plaintiff necessarily had to use and drive an automobile. He was also required to make trips with other employees on a truck used by the defendant in this department, and when required he would go with the truck to the lumberyard and assist in loading and unloading lumber, brick, and other materials at the different jobs. Plaintiff's duties required him to inspect all houses prior to repairing them, supervise the work as it progressed, and inspect it after completion. In doing this, he would go into attics and every other part of the houses; would climb ladders as high as 25 feet to inspect the roofs. We deem it unnecessary to go further than to show his duties required him to make use of an automobile in order to show that the work he was performing under his employment was hazardous. Haddad v. Commercial Motor Truck Company, 146 La. 897, 84 So. 197, 9 A.L.R. 1380; Youngblood v. Colfax Motor Company, 12 La.App. 415, 125 So. 883; Labostrie v. Weber, 15 La.App. 241, 130 So. 885; Richardson v. Crescent Forwarding Company, 17 La.App. 428, 135 So. 688; Beebe v. McKeithen Const. Co., 5 La.App. 179.

Plaintiff's duties were to report at the office of the association in the morning, go over all complaints and requests for repairs, and to make out work orders for the different employees for the day. He would then meet the employees at the warehouse at 7 a. m. and issue the written orders. On this particular morning he drove to the edge of the sidewalk, directly in front of the warehouse door, his car when stopped being not more than five or six feet from the door; the warehouse being located jam against the sidewalk. He got out of his car with the orders in his hand; the other employees being at the entrance waiting for him. He alighted and stepped toward the warehouse and stepped on some object which caused him to fall. As he puts it, when his foot slipped or the object on which he stepped turned, he was jerked down and caught on his knee. Immediately a burning sensation came in his lower side. There is no dispute over the fact that the fall he received caused a hernia in plaintiff's side. When he fell, the work orders flew from his hand, some on the sidewalk and others in the entrance to the warehouse.

Under the above facts, we find no difficulty in arriving at the conclusion that the accident arose out of and in the course of plaintiff's employment, and the work in which he was engaged for his master was hazardous within the intendment of the Workmen's Compensation Act of this state.

We failed to mention that at times during the day when plaintiff's duties did not require him to be on one or more construction or repair jobs, he remained in the office of the association and received rents and other moneys that were paid in by the stockholders and borrowers. This part of his work was not of a hazardous nature, but is immaterial in this case for the reason that

the jurisprudence of this state is well settled that where an employee's duties are partly hazardous and partly nonhazardous, he is entitled to compensation for injuries, even though such injuries were received while performing a nonhazardous duty. Youngblood v. Colfax Motor Company, supra; Byas v. Hotel Bentley, 157 La. 1030, 103 So. 303.

The fourth defense urged is that plaintiff was not disabled from performing his regular duties by the injuries received in the accident. We think there is little or no merit in this defense. Although plaintiff was injured on March 2, 1936, he continued trying to work until June 15, 1936, for which period of time he was paid his regular salary. His condition was gradually becoming serious and his work unsatisfactory, as is shown by a letter dated May 30, 1936, from the president of defendant association, which reads as follows:

"Mr. Wm. Wood, Monroe, Louisiana

"Dear Sir: As you know we have no extra force. Evidently you are unable to do the work incident to the position you occupy, therefore this letter is to advise you that we will not need your services effective June 15.

"Yours very truly,
"A. L. Harrington,
"The Peoples Homestead & Savings Association."

We are convinced that the record discloses plaintiff's condition has gradually grown worse and that at the time of trial he was not physically able to perform any kind of labor which he had been accustomed to perform. He could not climb a ladder, nor could he stand on his feet for any appreciable length of time, without great pain, although he has constantly worn a truss since the accident. He attempted to work in his garden, but due to pain was forced to desist. There can be no doubt of the fact that plaintiff was totally disabled from performing his usual and customary work, due entirely to the accident, at the time this case was tried below.

The last defense, which is urged in the alternative, is that defendant has offered to furnish plaintiff with an operation which he has refused, and that if he would undergo said operation, he would be a well man in ninety days. They ask that if compensation be allowed, it be limited to a period of time not exceeding ninety days after the accident. It is unnecessary to discuss this defense as the jurisprudence of this state has long been well settled on this question, and adversely to defendant's contention. James v. Hillyer-Deutsch-Edwards, Inc., 15 La. App. 71, 130 So. 257.

In a supplemental answer, defendants offered to plaintiff an injection treatment for hernia and allege correctly that he has refused said treatment. They contend that he should take this treatment, and, if he will do so, would be a well man within ninety days; and since he has refused, his compensation should be limited in term to ninety days.

We gather from the testimony offered by the two physicians and surgeons who testified, one for plaintiff and one for defendant, that this injection treatment was used more than 100 years ago in some foreign country, but has never been accepted or used in the United States by the medical profession until its use by a few surgeons during the last year. The United States government will not allow its use on those under its charge, viz., the Army, Navy, CCC boys, etc. The two doctors who testified in the case derived what knowledge they have of its use from reading some recent medical journals. The physician who treated plaintiff from the time of his injury until the day of trial, strenuously advised against its use on plaintiff. The one who testified for defendant, and who had only seen plaintiff once (when he examined him for the insurance company), was willing and anxious to experiment with it on him.

It is admitted that several different solutions can be used in this treatment. We understand that to mean that one solution is good for one person and the same solution would be harmful to another. It is also admitted that only certain kinds of hernia will respond to the treatment. One doctor says that the type of hernia that plaintiff has is not the kind for which said treatment should be given. He also states that plaintiff's physical condition and his extreme heavy weight are against said treatment, and points out the many dangers attached to it. Plaintiff's doctor testified that he nor any other doctor in Monroe had ever used the treatment; he had never seen it used but had acquired a solution to be used in said treatment and was going to try it as soon as he could find some one willing to try it.

It is ridiculous to think a court of justice would say to a man in plaintiff's condition that he must starve or live on charity, un-

less he submit himself to a physician in order that he may experiment with some treatment he has merely read about in a medical journal, and which treatment he admits is not recognized or accepted as a safe one by the medical men of the country. This contention of defendants is wholly without merit.

We are convinced that plaintiff has made out his case in every particular and that the judgment of the lower court awarding him compensation for total and permanent disability is correct, and it is affirmed, with costs.

Since this case was submitted to this court and on August 22, 1937, the defendant association has filed an application praying that the case be remanded to the lower court for the taking of further testimony to show thereby that plaintiff is physically able to perform manual labor such as he did prior to the accident on March 2, 1936. It attached to this motion an affidavit, which is as follows:

"State of Louisiana, Parish of Ouachita

"Before me, the undersigned authority, a Notary Public in and for the above Parish and State, personally came and appeared Miss Nita Smith, who, being by me first duly sworn, deposes and says: that she is the office manager and general bookkeeper of Vaughan-Wright-Bendel Clinic, of Monroe, Louisiana, and that in this capacity she keeps the records of all payments made by Vaughan, Wright and Bendel to the various employees.

"That she knows of her own personal knowledge that William Wood, plaintiff in the suit of Wm. Wood vs. Peoples Homestead & Savings Association, has been collecting bills for the Vaughan-Wright-Bendel Clinic since February 1, 1937, and that he has earned and has been paid the sum of $166.83 as of August 16, 1937; that Wm. Wood drives his own automobile in making collections and from observation is not suffering from any disability in doing this work. William Wood informed your affiant that he is collecting for other concerns and that he has another job which requires him to travel about the country in his automobile.

"[Signed]   Nita Smith.

"Sworn to and subscribed before me on this the 18th day of August, 1937.

"Annie L. Butler, Notary Public."

He has also filed a brief in the case.

Plaintiff has answered the motion and attached an affidavit from plaintiff, which is as follows:

"State of Louisiana, Parish of Ouachita

"Before me, the undersigned authority, personally came and appeared William Wood, who, when duly sworn, deposes and says that he is the plaintiff in the case of William Wood v. Peoples Homestead & Savings Association and the Travelers Insurance Company, on appeal from the Fourth District Court to the Court of Appeal for this district. Affiant further states that since he was discharged by the Peoples Homestead & Savings Association in June, 1936, he has not been regularly employed in any capacity by anyone for the reason that he has not been physically able to do work of a reasonable character; that in an effort to earn everything he could for the support of himself and family, he has accepted light work in the form of bill collector for Vaughan-Wright-Bendel Clinic since about the middle of January, 1937. That affiant has devoted only a few hours per day and during only a few days each week in connection with his services as bill collector for said clinic; that during said time, which is approximately 8 months, about fifty per cent of the collections which affiant has made has been by letter or by telephone call, resulting in the payment of said account by the debtor at the office of the clinic and without the necessity of a visit by your affiant; that affiant's wife and children have driven him in his car on a majority of the calls or visits which it is necessary to make in an effort to collect the accounts of said clinic.

"Affiant further states that even with the small earnings from his efforts as a bill collector for said clinic, had it not been for the financial assistance given to affiant by members of his family, he would not have been able to meet his ordinary bills for necessities for the support of himself and his family, and would necessarily have been in need.

"Affiant further states that he has made no physical improvement since the trial of this case in the District Court and is at present and has been since said injury physically disabled to do work of the character which he was performing at the time of his injury or work of a reasonable nature. So help him God.

"[Signed]   Wm. Wood.

"Sworn to and subscribed before me this 16th day of September, 1937.

"Gladys B. Sholars, Notary Public."

He has also filed a brief in the case.

The affidavit in support of defendant's motion is inefficient to cause the case to be remanded for further evidence. The only specific allegation is that plaintiff can drive his car and for a period of nearly eight months has earned through collections a small pittance of a little more than $20 per month. It is not shown that any evidence could be produced to show that he could do similar labor such as he was performing prior to the accident, or that he could do work of any reasonable character such as he was accustomed before the accident. It is commendable in plaintiff to attempt to earn a little money and do whatever his physical condition will permit. He might take his seat on a corner in an easy chair and sell papers and peanuts, but that would not deprive him of his right to compensation, under the law. The law does not require that one sit idly by and hold one's hands in order to receive compensation for injuries which have incapacitated one from performing the regular line of work. If that were true, instead of the law being a humane one it would be most inhuman. Parker v. Weber-King Mfg. Co., 19 La.App. 177, 139 So. 660, 661.

The motion to remand is denied.