Plaintiff seeks to recover from the defendant, his employer, compensation at the maximum rate permitted under our Workmen's Compensation Act, Act No. 20 of 1914, as amended, for a period not exceeding four hundred weeks, subject to a credit of $1,160 previously paid to him, and alleged to be due him as the result of an accidental injury received by him on September 11, 1944, which said injury permanently and totally disabled him.
He alleges that the defendant is engaged in the business of operating moving picture establishments and places of amusement, which said business is a hazardous one. He further alleges that on the day and date of the alleged accident, he was employed as a carpenter, a hazardous occupation and while performing duties arising out of and in the course of his employer's business in repairing a theatre, he fell from a ladder, causing him to fall to the ground resulting in a fracture of a vertebra of the backbone.
In its answer, the defendant admits that it was engaged in the business of operating moving picture establishments and places of amusement; admits that plaintiff was injured while in the course and scope of his employment in a fall from a ladder; admits the resulting injuries; admits that plaintiff was paid the maximum compensation for a period of 58 weeks, or $1,160; and admits the result of the said injury has permanently and totally incapacitated the plaintiff from following his occupation of carpentry. The defense of the suit is that the business of defendant is not hazardous and therefore plaintiff cannot recover.
Upon these issues, the case was tried. Upon the conclusion of the evidence and prior to argument and submission of the case, defendant filed an exception of no right or cause of action. After argument and submission, the trial judge, in effect, overruled the exception and granted judgment in favor of plaintiff and against defendant as prayed for. The defendant has appealed.
Under the pleadings as set out, supra, the only question presented to us is the question of whether or not the business of defendant is hazardous or whether it is hazardous and non-hazardous, or whether *Page 95 
is it non-hazardous, in so far as same applies to plaintiff.
Mr. Clyde Williams, the Vice-President of defendant, was called under cross-examination by the plaintiff. He states that the defendant company owned a chain of motion picture theatres, that in the operation of these theatres, they use numerous electrical appliances; operate motors for their cooling systems, and other motors; that the moving picture machine is operated in a fire proof compartment, for the reason that the film is rather inflammable; that they own and use automobiles and pick-up trucks in their business; that most of their theatres have marquees on the front of the theatres where the employees are required to use ladders to change the advertisement of the programs, which change of program is generally two or three times a week. They maintain their theatres for minor repairs, which is very frequent over the circuit. They employ such repairmen as carpenters, artisans, skilled mechanics and electricians whenever necessary for a day or two at a time.
Plaintiff testified that he was employed by the defendant on or about the day of the alleged accident as a carpenter at the moving picture theatre of the defendant on South Street in the City of Lake Charles. Plaintiff was on a ladder and describes the work he was doing as "Putting a circle in front of the place by the ticket office. There is about three or four steps up there and one of the circles around that holds the ladder was rotten and I was putting a new double length on there. I had holes bored through the things and had used floor bolts. I was on my last one, but in order to reach my last one I had to change my foot on the ladder to get to it. I finally got it screwed up and was coming down and when I moved my foot over to get on the ladder to come down, I came down on the concrete," on part of his back.
Mr. Clyde Williams was recalled on direct examination on behalf of defendant. He states that defendant is engaged only in the picture show business, owning some thirty theatres; that a crew of workmen for the purpose of keeping buildings in repair is not maintained but that whenever it becomes necessary to do minor repairs, such as plaintiff was doing on the day of the accident, a man is employed for that repair job; that extended repairs to their buildings are made by contract, and they do not engage in repair work for others. Plaintiff was injured while repairing the marquee of "The Victory Theatre." He states "It (the marquee) is outside of the theatre building, just like an awning. It was an awning outside of the building." The moving picture machines are in the booth and in operation during the show. It was not necessary for plaintiff to have come in contact with any of these machines at the time he was repairing the marquee in the picture show theatre.
On cross-examination, Mr. Williams states that a Mr. Frank Hebert is employed by the defendant in charge of the maintenance of their theatres, and through him are employed carpenters, mechanics and plumbers; whenever he needs help, "he would go out and find somebody to fix a lock or window, etc." The only maintenance work which is done by the defendant is on their own theaters. They do no outside work or for others.
[1] The operation of a moving picture theatre is not designated in our Workmen's Compensation Act as a hazardous business. Under the facts in this case, in accordance with the evidence outlined, supra, it can safely be stated that the business of the defendant was both non-hazardous and hazardous; that part of its business being hazardous consists of operating moving picture machines, electric motors and fans in its cooling systems, automobiles and pick-up trucks, all essentials in the conduct of its business. However, the evidence in this case does not disclose that plaintiff was employed to perform any duties in connection therewith. Were plaintiff's major duties directly connected with these hazardous instruments then there would be no question as to his recovering compensation, regardless of what he was doing at the time of the accident. Byas v. Hotel Bentley, Inc., 157 La. 1030, 103 So. 303; Gallien v. Judge, La. App., 28 So.2d 101, 102.
[2, 3] Though the plaintiff was engaged in a hazardous occupation, it being admitted *Page 96 
that carpentry is hazardous, yet it is the business of the employer which governs. Since plaintiff's employment was not directly connected to the hazardous features of defendant's business, we must look further if compensation is to be allowed. It is not disputed, and in fact cannot be disputed, that in order to conduct a picture show theatre, a building is necessary and essential and that the building be kept in repairs. Likewise, the marquee must have been determined by the defendant to have been a necesssary adjunct to the theatre and it had to be kept in repairs in order to have the proper use thereof. Defendant, although not in the business of repairing buildings for others, undertook, by a foreman in charge, to make the necessary repairs, such as was being done by the plaintiff at the time of the accident and injury. The question then arises whether plaintiff, under these facts, is protected by the compensation statute since the business of repairing of any building or structural appurtenances is classified as a hazardous occupation.
We are of the opinion that the case of Hecker v. Betz, La. App., 172 So. 816, 817, is decisive of the question. In that case Betz, an undertaker or mortician, found it necessary to make substantial changes in the building which he used, not only as a residence for himself and family, but also as a funeral home and as a garage for the automobiles used in his said business. The court held that although the business of the defendant, to-wit, undertaker or mortician, was not hazardous, and contained no hazardous features, yet the fact remained that defendant was engaged in the operation of motor vehicles necessary for the conduct of such business and that such operation made defendant's business hazardous and non-hazardous, and that an employer who is engaged in such business and who, in furtherance of that general business, undertakes construction work which, in itself, is hazardous, should be held liable for compensation to those employees who are engaged in such hazardous work. In that case, plaintiff, a plumber, was employed to install plumbing fixtures in the building used by Betz in housing his motor vehicles and in operating the business and was allowed to recover compensation for his injuries. In our case, plaintiff was employed to repair a marquee, an essential part of the theatre building housing the numerous electrical appliances, the motors for the cooling system and other motors and the moving picture machine, all being essential in the conduct of defendant's business. In the present case the work being performed by the plaintiff was more directly connected with and more essential to the hazardous features of defendant's business than that of defendant's business in the Hecker case. We therefore conclude that plaintiff in the instant case was protected by the Compensation Act and is entitled to recover.
The defendant strongly relies on the case of Gallien v. Judge, La. App., 28 So.2d 101, 103, wherein we denied relief to an employee who alleged that he was employed as a carpenter to do repair work on his employer's combined residence and place of business, regardless of the allegations that the defendant was in the cattle business and used motor trucks to transport his cattle. We do not find wherein this case gives much comfort to defendant. In that case, we stated: "Whilst he did allege that in connection with his business, defendant operated trucks propelled by gasoline engines, and other motor vehicles, nowhere did he allege that his duties as a carpenter in repairing defendant's house brought him in contact in any manner whatsoever with those trucks or other motor vehicles. The cases of Hecker v. Betz, La. App., 172 So. 816, and Collins v. Spielman, 200 La. 586, 8 So.2d 608, relied on by plaintiff do not serve as authority to support his claim." In other words, the Gallien case was differentiated from the Hecker case in that in the Hecker case, the residence of Betz was used as a garage for the storage of the motor vehicles used in defendant's business while in the Gallien case, the residence was used solely as a residence for defendant's family with probably a desk or room used as an office, no allegation having been made that the trucks were stored under the roof of the residence.
In Rayburn v. DeMoss, 194 La. 175, 193 So. 579, the Supreme Court refused to allow a carpenter compensation as a result of *Page 97 
injuries sustained from an accident which occurred while he was rebuilding a barn which had been destroyed by fire, for the reason that, at the time of the accident, his employer was engaged in farming, a non-hazardous business, and that plaintiff was not performing a service directly or indirectly in connection with the operation of the dairy in the past or in the future. The Supreme Court stated that the testimony showed that there wasn't any machinery in the barn or to be operated in the barn in the near future. For that reason the Supreme Court differentiated that case from the Hecker case supra, thus tacitly approving the holding of the Hecker case.
The defendant also strongly relies on the case of McAllister v. Peoples Homestead Savings Association, La. App., 171 So. 130. In that case, the plaintiff was employed by the defendant as a plumber. The defendant was a building and loan corporation and its sole business was the lending of money to home owners on mortgages. In the course of its business, it was forced to foreclose many of the mortgages, especially during the depression era. To protect its interest, defendant would be forced to buy in the property and then rent it until such time that it could dispose of the property. Having become the owner of much property, which it rented, it had to be kept in repairs. The number of residences and other buildings acquired by it was sufficient to justify in putting in a repair department in which it kept employed regularly a certain number of carpenters, painters, plumbers, etc., of which plaintiff was one. It used this department solely to keep its own property in a state of repair. Under these facts, the plaintiff was denied recovery of compensation for the reason that defendant was not engaged in the construction of buildings. This case is not in point because the business of defendant was non-hazardous and did not require the use of electrical appliances and motors, and the keeping in repairs the buildings housing such appliances and motors, such as in our case, to properly conduct its business. In other words, the defendant in that case was not a business which was hazardous and nonhazardous per se.
As to the effects of the injuries, plaintiff alleged in Article 8 of the petition: "Your petitioner further shows that because of said accidental injury, he has since September 11, 1944, been totally incapacitated and is still totally incapacitated from doing any work and your petitioner reliably informed, believes and therefore alleges that he is and will continue to be permanently and totally disabled as a result of said accidental injury." To this allegation, the defendant answered: "Article VIII of plaintiff's petition is admitted." Accordingly, we see no reason for any discussion of the result of the accident regardless of the arguments of plaintiff and defendant made in the briefs. Moreover it is established by the evidence that plaintiff is totally and permanently disabled as a result of the accident.
For these reasons, the judgment appealed from is affirmed.