HARDY, Judge.
This is a suit in which plaintiff claims compensation for total and permanent disability. Named as defendants were William W. Page, owner and operator of a number of motion picture theaters, his insurer, the Preferred Accident Insurance Company of New York, Mike S. Ohlsen, a building contractor, and his insurer, The American Surety Company. During the pendency of this suit receivership proceedings against the Preferred Accident Insurance Company were instituted in New York. Ancillary proceedings were filed in Louisiana by Plonorable Wade O. Martin, Secretary of State, as the result of which there issued a temporary restraining order ■prohibiting the said company from further engaging in business within the State of Louisiana. The receiver has not been made a party to this suit, and, as a consequence, the named insurance company is no longer considered a party defendant. An exception of no right or cause of action was filed on behalf of the defendant, Page, which exception was overruled. After trial on the merits there was judgment in favor of plaintiff and against the defendant, Page, fixing plaintiff’s compensation at $30 per week during the period of disability, not exceeding 400 weeks. There was further *139 judgment in favor of the defendants, Ohl-sen and his insurer, rejecting plaintiff’s demands. From the judgment the plaintiff, Speed, and defendant, Page, have appealed.
There is not the slightest ground for any question, and, indeed, none has been raised in this Court, with respect to plaintiff’s wages and the permanent and total nature of his disability.
• One of the two principal issues which are here presented for our determination deals with the question of the identity of plaintiff’s employer. Plaintiff’s petition alleged that he was employed by both Page and Ohlsen. The Judge of the District Court found as a fact that plaintiff was employed solely by defendant, Page, and, as a consequence, plaintiff’s demands against Ohlsen were necessarily rejected.
We proceed to outline briefly the material facts which, in our opinion, bear upon this issue. Defendant, Page, was the owner and operator, among other similar ventures, of the Arcade Theater located in the town of Ferriday, Louisiana, and his general manager of this enterprise, who appears to have transacted most of its business, was one A. E. Stewart, who died sometime prior to the trial of this suit. In the month of July, 1950, the Arcade Theater was seriously damaged by fire, and, although the exact extent of the damage is not reflected by the record, it is obvious that for practical purposes the theater building was destroyed. Shortly after this event the plaintiff, a laborer with some experience and skill as a carpenter, together with other individuals, was employed by Stewart. This small crew of men was charged with demolishing operations, the salvage of material and the general cleaning up of the premises, all in preparation for the beginning of rebuilding operations. A short while thereafter the defendant, Page, entered into a verbal agreement with the defendant, Ohlsen, for the reconstruction of the theater building. The evidence as to the terms and conditions of this agreement is somewhat conflicting and thoroughly unsatisfactory. It appears that most of the negotiations with respect to the admittedly loosely understood contract were conducted between Ohlsen and Stewart. In any event, we can only conclude that Ohlsen was employed primarily for the purpose of general supervision of the job. Page testified it was his understanding under the agreement with Ohlsen, which was on a cost plus basis, that the latter was to receive 10% of all materials and labor up to the total cost thereof of $25,000. Ohlsen testified that he was to receive only 8% on all materials and on all labor which he employed on the job. All materials were charged to Page’s account and with respect to payrolls it was customary for Stewart to procure the necessary • funds on weekly paydays from the bank under a loan agreement which had been consummated between Page and the financial institution. Stewart paid the workers on his own crew and transmitted to Ivy Graves, the construction foreman who was supervising the job for Ohlsen, the funds with which to pay his crew of laborers. Unquestionably there were two separate work crews engaged in two separate undertakings, the only relationship being that both were working toward the accomplishment of a common purpose, that is, the rebuilding of the theater. The demolition, salvage and clean-up work was initiated sometime prior to the time that Ohlsen entered upon the scene, in his capacity as construction contractor, and continued after that time entirely independently from the Ohlsen job. Speed, the plaintiff, appears to have served as a sort of straw boss. He kept time for himself and his fellow-workers, and submitted his time reports to Stewart, who computed and paid the wages. Unfortunately, neither Page nor Ohlsen appears to have had more than a superficial connection with the work in progress, and their respective subordinates, Stewart and Graves, in effect, were charged with the necessary operations. However, it is definitely established that plaintiff, Speed, had no real relationship with Ohlsen or Graves or the actual work of construction except in rare instances, as hereinafter particularly related. Indeed, Ohlsen testified that he had specifically instructed his foreman, Graves, not to use the services of members of the Stewart crew of workmen. Despite this instruc *140 tion Graves occasionally did call upon the Stewart workers for assistance in connection with heavy operations, and it was one such instance which led to the accident out of which this litigation arose. On September 7, 1950 the Graves crew was preparing to raise a truss and Graves called upon the other workmen on the job, members of Stewart’s crew, to assist in this operation. In answer to the call the plaintiff, Speed, left the work in which he was engaged at another part of the premises, started toward the scene of the truss raising operation, and while so proceeding fell from a scaffold to the ground, a distance slightly more than 23 feet, sustaining very serious injuries, which, as we have above noted, caused permanent and total disability.
Our appreciation of the above facts leads us quite certainly to the conclusion that the plaintiff, Speed, was engaged in the sole employ of defendant, Page. There was no employer-employee relationship as between Ohlsen and Speed. Plaintiff was employed, paid, supervised and directed by Page’s manager. Any connection with the Ohlsen job was purely casual and voluntary.
Under the facts we do not think the borrowed employee doctrine, which is asserted as against defendant, Ohlsen, is sufficiently serious to necessitate comment. And, certainly, the facts do not warrant the application of the “employee pro hac vice” principle considered in the case of Spanja v. Thibodeaux Boiler Works, La.App., 2 So.2d 668, which is heavily relied upon by counsel for defendant, Page.
As a result of these conclusions we find ourselves completely in accord with that part of the judgment which released the defendant, Ohlsen, and his insurer from liability.
 We next proceed to S. consideration of what we regard as a more difficult and more serious proposition. The exception of no cause and no right of action on behalf of the defendant, Page, is predicated upon the contention that plaintiff’s petition did not disclose that he was injured in the performance of work which constituted a regular part of the business, trade or occupation of the named defendant and that, on the contrary, the petition itself established the fact that plaintiff was injured in the performance of duties which were not a part of such regular trade, business or occupation. This same contention is, of course, urged in the argument on the merits.
The factors which are to be considered as the basis for the proposition advanced are that defendant, Page, is engaged in the regular business of operating motion picture theaters; that he owned and operated the theater undergoing major repairs and reconstruction at the time of plaintiff’s injury; that defendant, Page, was not engaged in the contracting business or in the repair and reconstruction of buildings. Under these facts and circumstances, conceding that the operation of motion picture theaters has been held to be a hazardous occupation, it is urged that the immediate enterprise of reconstruction of the theater building itself was not a part of such occupation or business and therefore the conclusion should necessarily follow that plaintiff was not injured while engaged in the course of his employer’s trade, business or occupation.
Able counsel for defendant maintains that this conclusion is supported by the pronouncements in the following cases; Wilkie v. Langlois, La.App., 164 So. 434; Caldwell v. George Sproull Co., 184 La. 951, 168 So. 112; Brooks v. Smith, La.App., 41 So.2d 800. Counsel, for obvious reasons, does not attempt to reconcile the findings in the case of Gonsoulin v. Southern Amusement Co., La.App., 32 So.2d 34, being content with the respectful observation that the court erred in this case insofar as the legal aspects of the application of the Workman’s Compensation Act were concerned.
The resolution of this issue must depend upon an interpretation of the provision of the Workman’s Compensation Statute, Section 1, Subdivision 2, Louisiana Revised Statutes of 1950, LSA-R.S. 23 :1035, with respect to the application of the Act, which reads, in part, as follows :
“ * * * (shall apply) to every person performing services arising out of and incidental to his employment *141 in the course of his employer’s trade, business, or occupation * *
Adverting to' the Caldwell case; supra, we think it desirable to consider not only the pronouncement of the Supreme Court in the light of the above quoted statutory provision but also the reasons which are. set forth in greater detail in the opinion of the Court of Appeal, whose judgment was affirmed by the Supreme Court. Caldwell v. George Sproull Co., Inc., La.App., 164 So. 651, 652. It is observed that the Court of Appeal predicated its conclusions upon the proposition tendered by the question which it stated as follows:
“Where an employer is engaged in two distinct lines of business, neither incidental to the other, one hazardous under the statute, the other nonhazardous, and an employee is injured while performing services rendered and to be rendered exclusively to and in the nonhazardous business, is he entitled to compensation ?
The Court found that the business of the Sproull Company 'Consisted of the operation of a warehouse and manufacturing business, which hazardous business was entirely separate and distinct from the company’s further operation of wholesaling and retailing paints, oils, varnishes, etc. The claimant was injured while engaged in hanging paper in defendant’s retail store. The Court pointed out that the claimant was engaged in a particular service which had no contact with the manufacturing plant, which was the hazardous department of defendant’s business. In support of its conclusion the Court referred to the following holding in Jackson v. Young, 6 La.App. 854, as follows:
“It is not enough that the work done should be hazardous if it be not also incident to or in the coiirse of the trade, business or occupation of the employer which is within itself hazardous under the statute.” (Emphasis supplied.)
And again the Court quoted from Charity Hospital of La. v. Board of School Directors, La.App., 140 So. 60, as follows:
“It is clearly pointed out by the court in that decision (Shipp v. Bordelon) that the employer must be engaged in a trade, business, or occupation in reference to which the laborer is employed.” (Emphasis supplied.)
Turning to the opinion of the Supreme Court affirming the judgment of the Court of Appeal, we find the following succinct pronouncements:
“The plaintiff is a paperhanger by trade and was employed * * * to do a special job of papering * * *. (Emphasis supplied.)
“As plaintiff was never employed by defendant company to work or serve in any capacity in the course of his employer’s business, but only as an outside workman to do a special job of paperhanging, it cannot be held that he was an employee of defendant company under the Employers’ Liability Act of this state * * [184 La. 951, 168 So. 113.] (Emphasis supplied.)
From a consideration of the opinions of the two courts it appears quite clear to us that the Caldwell case turned upon the question of the employment, vel non, in the course of the employer’s business.
Relating this proposition to the instant case it is, of course, apparent that the defendant, Page, was not engaged in the business of constructing, demolishing or repairing buildings. He was engaged in the operation of a motion picture theater. It is certain that when the theater building was destroyed or rendered useless by fire the defendant could not engage in the continuance of his business until the building had been rendered usable by reconstruction and repair. Now it is equally obvious that he had two courses, or a variation of two courses, from which to choose. He could undertake the necessary reconstruction work himself or he could contract to have such work done, or he could do part of the work through his own employees and contract for a portion thereof. Page elected to adopt the last stated alternative, for the facts show clearly that he was doing part of the work, demolishing and cleaning up, through his own employees, and that he contracted with Ohlsen for the actual reconstruction work. It is quite correctly urged that Page was not in the con *142 struction business, and, as a consequence, the conclusion is argued that plaintiff, Speed, who was a laborer, was not employed in the regular business, trade or occupation of his employer under the intent and purpose of the above quoted provision of the statute. This conclusion is inescapable, but we wish to emphasize the point that the application of the statute does not depend upon what learned counsel for defendant has designated as the regular course of the employer’s trade, business or occupation. On the contrary, the Act specifically uses the expression “arising out of and incidental to” the employment. The distinction is pointed in the Sproull case by the Court of Appeal and in the cases cited, which we have emphasized in our quotations from these cases, supra.
It is quite true that construction work would not appear, upon casual consideration, to be a part of the business, trade or occupation of operating a motion picture theater. But let us examine the practical situation involved. The operator of a motion picture theater must have a building in order to conduct such business; if the building is in need of repairs the owner of the business must make or procure the making of such repairs; if it is desirable to enlarge, alter, or change the physical accommodations, the owner of the business must make or procure the making of these indicated and desired changes. Can it be said that if the owner and operator of a motion picture theater desires to make repairs or changes involving construction and undertakes such work through his own employees, that the work itself is not an integral part of his business, trade or occupation consequentially incident to and desirable in its conduct? We think not.
In support of this conclusion we point out a pertinent line of jurisprudence:
Gonsoulin v. Southern Amusement Company, La.App., 32 So.2d 94, where a single theater owner was held liable for compensation claimed by a carpenter injured while repairing the arcade or marquee of the theater building, and in which case the court held that the work of the carpenter was in furtherance of defendant’s business.
Hecker v. Betz, La.App., 172 So. 816, in which a plumber performing services for the 'benefit of an employer engaged in the undertaking business was allowed recovery, the Court specifically declaring:
“But even though construction or remodeling work may not be a part of the regular business of the employer, if, in furtherance of his regular business, which is in itself hazardous, the employer undertakes such remodeling work, then he renders himself liable in compensation to those employees who may receive injuries while doing such work.” (Emphasis supplied.)
We think the case of Brooks v. Smith, supra, is readily distinguishable under the facts, and is inapropros to the case at bar because it involved an injury sustained by an employee in an occupation which had not even a remote connection with the trade, business or occupation of such employer.
Similarly the case of Wilkie v. Langlois, supra, 164 So. 434; in our opinion has no bearing upon the case before us. While the facts as alleged in the pleadings are remarkably similar to those of the instant case in that the employer was engaged in demolishing a brick wall, formerly constituting a part of a theater building, the pleadings in the case alleged that the employer was engaged “in the hazardous business or occupation of demolishing the said brick wall”. The court noted that the pleader instead of developing the proposition that the defendant was engaged in such work “as a trade, business or occupation” negatived such a conclusion by his own pleadings. Obviously in the light of these developments this case cannot be considered as authority on the point with which we are here concerned.
In conclusion we point out that in our opinion the compensation statute does not purport to restrict the right of an employee’s recovery to those instances in which the injury is sustained in the performance of the regular course of the employer’s business, trade or occupation. Quite to the contrary it is our conception of the statute that it is intended to protect the right of an employee when he is en *143 gaged in an employment with reference to, in connection with, incident to or in promotion of the employer’s trade, business or occupation. If we are correct in this conclusion there can remain no doubt as to plaintiff’s right to recovery.
For the reasons assigned the judgment from which appealed is affirmed at the cost of defendant-appellant.
GLADNEY, J., dissents.
McINNIS, Judge ad hoc, sitting.
KENNON, J., not participating.